## Reap et al. v. Battle, Appellant.

155  265
190  338
155    265
210    627
155    265
f 36 SC  282

*Interest—Usury—Mortgage.*

The satisfaction of a mortgage and taking of a new mortgage in its place does not extinguish the mortgagor's right to have an amount paid on the prior mortgage as usury applied in discharge, pro tanto, of the principal debt.

*Estoppel—Usury—Defences.*

The mere omission by a mortgagor, at the request of the mortgagee and for his purposes, to set up the defence of usury, in a proceeding to determine whether the mortgage was a first or second lien, will not estop the mortgagor from subsequently setting up the defence of usury.

*Mortgage—Scire facias—Usury—Terre tenant.*

The only person who can defend a scire facias sur mortgage, because of usury included in the mortgage, is the mortgagor.    A terre tenant, whether he became such by private or judicial sale, cannot as a general rule make the defence.

*Opening judgment—Mortgage—Subrogation.*

A mortgagor, against whose land a judgment has been entered upon a scire facias, cannot, after the land has been sold at a judicial sale, have the judgment opened on the ground of usury, if the mortgagee offers to file a paper renouncing and relinquishing all right to sue and to recover a judgment upon the bond accompanying the mortgage.

Before the entry of judgment the defendant had a legal right to set up the usury as a defence to the sci. fa., because of his liability on the bond; even after the rendition of judgment under the circumstances stated he has a right to have it opened, if it is necessary to protect him in any legal or equitable right; but as he would be entitled to the equitable right of subrogation to the extent only of making him whole, and as a discharge from liability on the bond will wholly release and discharge him from liability for the debt as well as the usury, he has no interest to be affected by the judgment, and therefore is not entitled to have it opened. Per RICE, P. J.

Argued April 10, 1893. Appeal, No. 40, July T., 1892, by defendant, Patrick Battle, from order of C. P. Luzerne Co., Oct. T., 1887, No. 557, discharging rule to open judgment in favor of Mary A. Reap et al., executors of M. Reap. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM and THOMPSON, JJ.

Rule to open judgment on sci. fa. sur mortgage.

The facts appear by the opinion of the court below, as follows, by RICE, P. J.:

" On April 28, 1869, the defendant borrowed from Michael Reap the sum of five thousand dollars and gave his mortgage for the amount payable in five years, with interest payable annually at the rate of six per cent. On the same date he gave to Mr. Reap a judgment note for fifteen hundred dollars payable in five annual installments of three hundred dollars each; and Mr. Reap gave to the defendant a paper acknowledging that the judgment note was given for interest on the bond and mortgage ' in addition to the legal interest due by the terms of the said bond and mortgage.' All these were parts of one transaction and together constituted a loan of five thousand dollars at twelve per cent interest.

" The defendant paid the note in full, and made many payments on the mortgage, so that, on August 5, 1876, computing the interest at the legal rate, and crediting the payment on that date, there was due upon the loan of five thousand dollars but

one thousand four hundred eighty-three and ninety-seven hundredths dollars, or, computing the interest at twelve per cent, but about four thousand dollars.

" On August 5, 1876, Mr. Reap surrendered to the defendant his judgment note, which had not been entered, satisfied the mortgage, and took from the defendant a new mortgage for five thousand nine hundred and twenty dollars. We judge from the terms of payment that the sum of one thousand nine hundred and twenty dollars represented the interest at twelve per cent on the principal sum of four thousand dollars from August 1, 1876, the date of the mortgage, until August 1, 1880, when the mortgage debt was to become due. According to the parol testimony, this mortgage was given in the place of the former one—as a ' renewal ' of it upon the same agreement as to interest—and not for any new or additional loan. The testimony of the two witnesses upon the subject is corroborated by the circumstance that on the same day the defendant paid eight hundred dollars on account of the mortgage.

" In August, 1887, the plaintiffs issued a sci. fa. on the mortgage, and in the following month the defendant filed an affidavit of defence, which, upon exceptions, the court overruled, and entered judgment for the plaintiffs on December 8, 1887. The amount of the judgment, as liquidated by the prothonotary, was $6,593.32. It was not alleged in the affidavit that the mortgage was usurious. The defendant's explanation of his omission to make the defence at that time requires us to go back a little.

" In February, 1886, the land was sold at sheriff's sale upon executions issued by other judgment creditors for a price insufficient to pay all of the liens. The purchaser was a lien creditor and claimed the right to apply his judgments on his bid. The sheriff made a return accordingly, exceptions were filed and an auditor was appointed. Pending the distribution a question arose as to whether the Reap mortgage was a first lien or was divested by the sale, and it was suggested, as a speedy mode of getting a decision of the question, that the defendant should raise it by an affidavit of defence, to which the plaintiffs would except. Mr. Lenahan says : ' He (Mr. Jenkins, the plaintiffs' attorney,) came to me and suggested that I would file an affidavit of defence, setting forth the circumstances of this previous judgment, and that then we could get a speedy

opinion from the court on exceptions filed by him to my affidavit of defence, as to whether the lien of this mortgage was divested or not. I told him that Mr. Battle intended making a defence on the ground that he had paid usurious interest. He then said I should let the usurious defence go, because, if I did not, it would prevent a speedy determination of that question as to whether the lien of the mortgage was divested or not. I told him I was afraid that Mr. Battle's rights in this usurious interest matter might be possibly interfered with by his not setting it forth in the affidavit of defence. He said, " you go on and there won't be any injury suffered by him on account of that." ' The report of the case shows that the only question raised and decided was the one above suggested. We held that the lien of the mortgage was not divested. Reap v. Battle, 4 Kulp, 453. The auditor subsequently decided in the same way, and his report was confirmed absolutely on February 11, 1888.

" After the entry of judgment the defendant made the following payments on account of the judgment and interest: Nov. 30, 1888, $200; Oct. 30, 1889, $100; Feb. 20, 1890, $100. The present rule was applied for and granted on May 23, 1891.

" It cannot be claimed successfully that the satisfaction of the first mortgage, and taking the new mortgage in its place extinguished the defendant's right to have the amount paid as usury applied in discharge, pro tanto, of the principal debt, much less that it would prevent him from defending at the proper time against the usury included in the new mortgage itself. The principle established in Campbell v. Sloan, 62 Pa. 481, and recognized in many subsequent cases is, that ' any security given in payment or discharge of an usurious contract is equally void with that. The original taint attaches to all consecutive obligations growing out of the original usurious transaction, and none of the descendant obligations can be free from it if the descent can be traced.' The cases cited by the plaintiffs' counsel were cases of confessed judgments and have no application to a case of this kind.

" It was held in Stayton v. Graham, 139 Pa. 1, that the doctrine of estoppel will be applied to prevent statements of record, abandoning existing rights, from operating as a fraud upon the party who has been led to rely upon them, thereby chang-

ing his conduct and condition, and the defence of usury is no exception to the rule. But in view of the circumstances under which the affidavit of defence was filed we do not think the defendant is estopped by his failure to set up the defence at that time. It did not mislead the plaintiffs and cause them to change their conduct and condition ; on the contrary he postponed the defence at the request of their attorney, for a purpose in which they, and not he, were particularly interested, and upon the understanding that his right to set up the defence in the future would not be affected. This is quite a different case from the one cited. The judgment was of course conclusive until reversed or opened, but if he had confessed it at the request of the plaintiffs the court would have opened it upon his petition and proof that it was usurious; and, a fortiori, his mere omission, at the request of the plaintiffs and for their purposes, to set up the defence at that time ought not to estop him from asking the interposition of the equitable powers of the court, if it is necessary for his protection.

" But the question arises whether the defendant is now affected by the judgment in such a way as to entitle him to have it opened, especially as the plaintiffs have offered to file a paper, a copy of which is contained in the depositions, renouncing and relinquishing all right to sue and recover a judgment upon the bond accompanying the mortgage. A sci. fa. on a mortgage is purely a proceeding in rem. It is in no sense in personam, for no other writ can issue but one to sell the land, etc.: Wilson v. McCullough, 19 Pa. 77. But while this is true, the only person who can defend a sci. fa. because of usury included in a mortgage is the mortgagor. A terre tenant, whether he became such by private or judicial sale, cannot, as a general rule, make the defence : Miners' Trust Co. v. Roseberry, 81 Pa. 309 ; Bonnell's Appeal, 5 Cent. R. 738 ; Stayton v. Riddle, 114 Pa. 464. The reason given for permitting the mortgagor to set up the defence, even though the property has been sold subject to the mortgage, and therefore the judgment on the sci. fa. cannot be enforced against him personally, is, that he is liable on the bond. ' How could he defend for usury in a suit on the bond after an adjudication that its whole amount was due upon the mortgage ? : ' Huckenstein v. Love, 98 Pa. 518 ; Parker v. Sulouff, 94 Pa. 527. A mortgage, unless it contains an ex-

press covenant to pay, does not of itself import any personal liability for the money it secures: Scott v. Fields, 7 Watts, 360; Fidelity Co. v. Miller, 89 Pa. 26; Baum v. Tonkin, 110 Pa. 569. If then the judgment is purely in rem, and if the defendant is released and discharged from any personal liability on the bond, how will he be harmed by permitting the judgment to stand? Being wholly free from the debt, is he not better off than he would be if the judgment should be opened, and, after a trial, reduced in amount?

"It is argued that he would be entitled to subrogation to the rights of the mortgage. It is true that when land is sold subject to the lien of a mortgage, and the mortgagor subsequently pays it, he is entitled to subrogation, because, as between him and the terre tenant, the land is the primary fund: Hansell v. Lutz, 20 Pa. 284; Dollar Savings Bank v. Burns, 87 Pa. 491. But that is not this case. The terre tenant bought subject to the lien of the unpaid balance on the mortgage, whatever that might be. If the judgment should be opened and the defendant be permitted to defend as to the usury included in the mortgage or paid on it before the terre tenant purchased, the judgment would be very considerably reduced in amount. But how would that benefit him? If he paid it and then collected the amount from the terre tenant he would be no better off in the end. This, however, is not what the defendant means. He claims that if the judgment should be opened and he should then pay to the plaintiffs the balance on the amount actually loaned with legal interest he would be entitled to subrogation, and would have a right to enforce collection of the mortgage as it stood at the time of the purchase by the terre tenant, without any deduction for usury. He would be subrogated, it is true, to the right of the plaintiffs to collect from the land the balance due on the mortgage, but we cannot agree that he would have a right to recover a larger amount than the mortgagee. 'The right of subrogation is an auxiliary equity, called into existence for the purpose of enabling a party secondarily liable, but who has paid the debt, to reap the benefit of any securities which the creditor may hold against the principal debtor, and by the use of which the party paying may thus be made whole:' Bisph. Eq. 42. If then the mortgagor elects not to pay the usury included in the mortgage, and to apply the pay-

ments of usury as payments on the principal, the balance would
be the measure of the mortgagee's right of recovery, and con-
sequently of the mortgagor's, if he pays it and is subrogated,
for that would make him whole. There is no doubt that a
mortgage may be kept alive, even after payment in full, if such
was the intention of the parties, and even though there be no
actual assignment to a trustee : Wilson v. Murphy, 1 Phila.
203. Though actual payment discharges a judgment or other
incumbrance at law, it does not discharge it in equity if there
are interests which require it to be kept alive for their protec-
tion : Loverin v. Humboldt Safe Dep. Co., 113 Pa. 6. But
this equitable right of the mortgagor or judgment debtor to
have the security kept in life after payment, and to be subro-
gated to the rights of the mortgagee or judgment plaintiff, is
subject to the general qualification by which the exercise of
all purely equitable rights is controlled, viz., ' That they must
not be asserted in such a way, or under such circumstances, as
to do violence to the rights and equities of other parties : ' Bisph.
Eq. 42. While it is not a fraud upon subsequent creditors for
a debtor to contract for or pay usurious interest on a loan, and
while his refusal to make the defence is not of itself evidence
of any intent to defraud them, yet where a debtor incumbers
his land for more than he is bound to pay, and this operates to
the prejudice of subsequent lien creditors who might otherwise
be reached by a sale of the land, we do not think, that, after a
judicial sale, subject to the lien of the incumbrance, for a price
presumably so much less than otherwise would have been bid,
he can claim the assistance of a court of equity in an effort to
collect more than he was bound to pay to protect himself.

" The results of our investigation are that, before the entry
of judgment, the defendant had a legal right to set up the usury
as a defence to the sci. fa. because of his liability on the bond ;
even after the rendition of judgment under the circumstances
stated he has a right to have it opened, if it is necessary to pro-
tect him in any legal or equitable right ; but as he would be
entitled to the equitable right of subrogation to the extent
only of making him whole, and as [a discharge from liability
on the bond will wholly release and discharge him from liabil-
ity for the debt as well as the usury, he has no interest to be
affected by the judgment, and therefore is not entitled to have

it opened.   As was said in Broomell v. Anderson, 6 Cent. R. 723, he sustains no such relation to the property that he can gain or lose by the judgment in this case.] [1]

" [He is entitled, however, if he so elects, to have the judg-ment reduced by the amount of his payments since its rendi-tion ; or, if he elects, to allow the judgment to stand for its full amount and when collected to be subrogated to the rights of the plaintiffs to the extent of these payments.] [2]

" [Now, April 4, 1892, upon the plaintiffs filing the release and paying the costs of spreading the same at length upon the record, and the costs incident to this rule, it is ordered that the rule be discharged.] " [3]

*Errors assigned* were (1–3) portions of opinion and order as above, quoting them.

*E. A. Lynch,* with him *John T. Lenahan,* for appellant, cited: Blim v. Wilson, 5 Phila. 78 ; Miners Trust Company Bank v. Roseberry, 81 Pa. 309 ; Marr v. Marr, 110 Pa. 65 ; Huckenstein v. Love, 98 Pa. 518 ; Adams, Equity, 110 ; Dollar Savings Bank v. Burns, 87 Pa. 491 ; Bisph. Eq. 42 ; Estate of Graff, Bennett & Co., 139 Pa. 69 ; Broomell v. Anderson, 6 Cent. R. 723 ; Parker v. Sulouff, 94 Pa. 527 ; Huckenstein v. Love, 98 Pa. 518 ; Bonnell's Ap., 11 Atl. Rep. 211 ; Mellon v. Painter, 5 Cent. R. 489 ; Blim v. Wilson, 5 Phila. 78 ; Mutual Life Ins. Co. v. Smith & O'Donnell, 5 Cent. R. 738 ; Mellon's Ap., 5 Cent. R. 490 ; Michener v. Cavender, 38 Pa. 334 ; Earnest v. Hoskins, 100 Pa. 557 ; Yost v. Mensch, 141 Pa. 73 ; Thomas v. Loose, 114 Pa. 35 ; Phillips v. Meily, 106 Pa. 536.

*F. C. Mosier* and *Q. A. Gates* for appellee, cited: Stayton v. Graham, 139 Pa. 1 ; Pipe Line v. Ins. Co., 145 Pa. 360.

PER CURIAM, May 1, 1893 :

Everything that is necessary to a proper understanding of the questions presented by the specifications of error, or that can be profitably said in relation thereto, will be found in the clear and able opinion of the learned president of the common pleas discharging the rule to show cause why the judgment should not be opened, etc.

For reasons there given at length the order discharging the rule is affirmed with costs to be paid by appellant.