Daniel H. Schweyer and Edwin DeLong to the use of Annie DeLong Kline, Appellants, *v.* Sarah Walbert and David Walbert.

*Judgment—Opening judgment—Bond and mortgage—Parol evidence to vary written instrument.*

A general liability upon a bond accompanying a mortgage given for purchase money of real estate may be restricted by proof of a contemporane-

ous oral agreement but for which the property would not have been bought nor the instrument in question executed, and by virtue of which there was to be no personal liability upon it, but the amount thereof was to be collectible alone out of the property conveyed.

Where a woman executes an agreement to purchase land and covenants to give "a mortgage on the said premises," and subsequently executes a mortgage and a bond without any restriction as to liability, and judgment is entered upon the bond, the judgment will be opened where the defendant testifies that she was induced to sign the bond, only upon a parol agreement that her liability should be restricted to the land purchased.

Argued Feb. 27, 1899. Appeal, No. 58, Jan. T., 1899, by plaintiffs, from order of C. P. Berks Co., March Term, 1896, No. 258, making absolute a rule to open judgment. Before STERRETT, C. J., McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Rule to open judgment.

ENDLICH, J., filed the following opinion.

The application in this case is to open a judgment entered upon bond and warrant of attorney and to stay an execution issued thereon. The allegation upon which it is founded is that the bond and warrant accompanied a mortgage given by defendants upon, and for a balance of the purchase money of, certain realty (thirty-four acres) purchased by Sarah Walbert from the use plaintiffs' assignors, under an express contemporaneous parol agreement that the defendants' liability for said purchase money, secured by the mortgage, bond and warrant, should be limited to the land purchased. The answer denies this allegation, asserting that the bond and warrant were fully explained to the defendants, and that the only agreement between the parties to the same, at the time of execution, had reference to forbearance in the collection of the principal upon certain conditions which have not been fulfilled.

The depositions of the use plaintiffs' assignors, whilst admitting that the defendants desired the liability for the purchase money to be restricted to the land purchased, distinctly deny that they agreed thereto, and aver that defendants consented to give a general bond upon the single stipulation set forth in the answer. The testimony of one of the subscribing witnesses disclaims his recollection of any conversation between the parties at the time of the execution of the papers.

Mrs. Walbert testifies that, when the agreement to purchase was made, Schweyer agreed to the restriction of liability to the land, and that, when about to sign the mortgage, she said to the scrivener, Schweyer being present, " I won't hope this will go any further than the thirty-four acres," and that the scrivener read the paper to her, " thirty-four acres, more or less." She does not appear to be aware of having signed anything but the mortgage, or that more than one paper was read to her. She declares, however, that she knows what was said, adding " I wouldn't have done it if I had known that I would get fast." Her husband deposes that, just before signing the papers, " she asked Mr. Schweyer, she hoped it wouldn't go further than the thirty-four acres," and " then Schweyer said, ' It shall not go further than the thirty-four acres.' " He emphatically declares there was no previous conversation or arrangement on the subject—nothing but what was said when the papers were executed. Nor, according to his statement, was there, at that time, anything said about the bond. The material portions of the scrivener's testimony are as follows : " Mrs. Walbert when she signed it (the bond and mortgage) told me that she didn't want to bind her other property, something to that effect . . . . I think he (Schweyer) was by ; that is my recollection . . . . I couldn't say (what Mr. Schweyer said) . . . . Mrs. Walbert told me to read these papers to her and explain it to her, and she said, ' Now it is understood that I do not bind my other property,' that is, her property that she had at that time. I said, ' Yes, that way it is understood,' and I understood it so too." On cross-examination, after stating that there was no conversation between Mrs. Walbert and Schweyer (DeLong not being present), he testifies :

" Q. Did you tell her that the bond and warrant as drawn at the time would be restricted to the lands described in the mortgage? A. I did. Q. You did tell her that? A. Yes, sir. Q. Was it so said within the hearing of Mr. Schweyer? A. That I don't know. . . . Q. And are you positive then that you told her that the bond and warrant covered nothing excepting what is specified in the mortgage? A. It was only this way : she said, ' Now, I don't want to sign anything binding my other property,' something to that effect ; I told her, ' That is all right ; you just sign it, that is all there is in it—or that is all that it

will bind,' something to that effect.  Q. Well, you didn't tell
her that this mortgage and bond and warrant would not be a
personal liability upon her in addition to those lands, if it didn't
bind any other lands; did you tell her that?  A. I don't think
I did.  Q. So that we understand you to say that her only
question was that the lands described in the mortgage should
be bound by it, and there was no question as to her personal
liability.  A. No, sir. . . . Q. You didn't communicate this
conversation to Mr. Schweyer at the time?  A. No, sir."

Asked again whether what was said was said within Schwey-
er's hearing, he replied, "No, sir; that I don't know . . . .
if there was anybody in the room they could have heard it."

The written agreement, by which Mrs. Walbert became the
purchaser of the property from Schweyer & DeLong, and in
pursuance of which the deed to her and the securities from her
were executed, is dated January 4, 1890, and refers to the con-
sideration and its payment in these terms: "Three thousand
and ninety-four dollars, on the first of April next, in cash and
mortgage on the said premises, and the balance of six hundred
and six dollars is to remain on said premises as dower," etc.
The cost of the conveyance was, under the agreement, to be
borne by the grantors, and the evidence is that they paid the
scrivener, though his employment was in pursuance of an un-
derstanding between all the parties to the transaction.

It has been held that a general liability upon a bond accom-
panying a mortgage given for purchase money of real estate
may be restricted by proof of a contemporaneous oral agree-
ment, but for which the property would not have been bought
nor the instrument in question executed, and by virtue of which
there was to be no personal liability upon it, but the amount
thereof should be collectible alone out of the property conveyed:
Irwin v. Shoemaker, 8 W. & S. 75; Hoeveler v. Mugele, 66
Pa. 348; Hoopes v. Beale, 90 Pa. 82; Lane v. Smith, 103 Pa.
415; and that the assignee of a bond without notice of such
an agreement, but also without inquiry of the obligor, will be
affected by it: ibid.; Janes v. Benson, 155 Pa. 489.  In the
present case, it would be inaccurate to say that there is any
evidence whatever to show that the original purchase of the
property by Sarah Walbert was induced by any understanding
concerning the extent of her liability upon the bond and war-

rant she subsequently executed. There seems to have been no mention of the subject at that time. Indeed, it is undisputed that the terms of the original purchase are fixed by the agreement of January 4, 1890. But that agreement, in so far as it refers to the security to be given for such part of the purchase money as shall remain unpaid, speaks only of a "mortgage on the said premises." A mortgage does not import any personal liability for the money it secures: Scott v. Fields, 7 W. 360; Fidelity I. & T. Co. v. Miller, 89 Pa. 26; Baum v. Tonkin, 110 Pa. 569; Reap v. Battle, 155 Pa. 265; and see Stanton v. White, 32 Pa. 358. Hence, according to the precise terms of the agreement, Sarah Walbert was not bound to give an obligation which would create a personal liability. If she was nevertheless induced to give one by an agreement limiting its effect, the transaction would fall within the rule above stated. It is suggested, however, with much ingenuity, that what the defendant here alleges is not an agreement to relieve her of personal liability on the bond, but only an agreement to restrict the lien of the judgment authorized to be entered by the warrant of attorney attached to the bond, so as not to constitute a continuing incumbrance upon her other real estate. This suggestion is based upon the decision in Stanton v. White, supra. If, as in that case, the question of the effect of the agreement here alleged depended upon the legal interpretation of the terms of a writing evidencing it, and were therefore one of law, it would be for the court to say whether the phrase used, "bind," "go further," etc., imported only a restriction of the lien, or a restriction of liability. If the former, the rule in Stanton v. White would apply. But the alleged agreement, in this case, rests in parol. Where a contract is made orally, the question of its effect is not one of mere interpretation, declaring the legal meaning of terms employed. The inquiry then is, in the first place, What was the language used by the parties? and, in the second place, What was intended and understood by them when they used it? and these are questions of fact, not of law: Maynes v. Atwater, 88 Pa. 496; Forrest v. Nelson, 108 Pa. 481. Upon each of them in the present case (and upon their decision as questions of fact must depend the applicability of the doctrine laid down in Stanton v. White) the evidence—embracing both the depositions of the witnesses

and the admitted facts—is such as to suggest, as a prudent course and in fairness to both parties, the aid of a jury, and therefore, under the doctrine of Jenkintown Nat. Bank's App., 124 Pa. 337, Fisher v. Holbrook, 7 Pa. Superior Ct. 647, and similar cases, to require the granting of defendant's application. It cannot, of course, be denied that the grounds upon which the latter is based involve the reformation of a written instrument. See Irwin v. Shoemaker, supra, p. 76 ; Hoopes v. Beale, supra, p. 83. It is well understood, that, in such cases, the application must be supported by testimony, which, if believed, would be sufficient to move a chancellor to grant the relief prayed for: Cloud v. Markle, 186 Pa. 614. A discussion in detail of the testimony here offered would, at this time, be unadvisable. As opposed by the explicit denials and averments of the plaintiff's assignors, its effect depends upon the credibility of witnesses whom the court has not now before it, upon presumptions of fact, and upon the weight of evidence as tested by the considerations just mentioned. All of these are matters for the determination of which a jury is the appropriate tribunal: Moore v. Small, 19 Pa. 461 ; Church v. Ruland, 64 Pa. 432 ; Phila. Trust Co. v. Phila. & Erie R. R. Co., 160 Pa. 590.

It was intimated by counsel at the argument that in no event would it be necessary or proper to open the judgment. In Irwin v. Shoemaker, supra, where, in a suit upon a bond accompanying a mortgage for purchase money, the defense alleged a contemporaneous parol agreement "that the money was to come out of no other property but the one sold," it was held that, even if the defense was established, the plaintiff was nevertheless entitled to a judgment, which then, together with any execution to be issued thereon, would "be controlled by the court, so as to prevent a levy on other than the mortgaged premises." In Hoeveler v. Mugele, supra, however, the proper form of the verdict and judgment, in such a case, is pointed out ; it ought to specify that the lien and execution are restricted to the property. Upon principle, it would seem that, in order to become effective and to justify the court in so controlling the execution, such restriction must be engrafted upon the record of the judgment. It is the judgment that governs and must be followed in the execution : Kneib v. Graves, 72 Pa. 104 ; and it is because such a restriction enters into and forms part of the judg-

ment: see Hageman v. Salisberry, 74 Pa. 280; Weaver v. Brenner, 145 Pa. 299; Wilson v. Arnold, 172 Pa. 264, that a defense upon the ground of it, resting in parol, operates by way of modification, reformation of the judgment itself and of the written instrument by virtue of which it is entered, and requires the kind and degree of proof demanded by that exigency. As a matter of regularity, therefore, as well as for the protection alike of the plaintiff and of the defendant, the proper course will be to frame an issue in the judgment, and not in the execution, the latter being stayed to the extent prayed for until the issue is disposed of.

The rule to show cause is made absolute.

*Error assigned* was the order of the court.

*C. H. Ruhl,* of *Ermentrout & Ruhl,* with him *James H. Marx,* for appellants.—An application to open a judgment entered upon a warrant of attorney is an equitable proceeding addressed to the discretion of the court; which discretion is very extensive, but it must rest on a foundation of competent and sufficient evidence: Bitner v. Boone, 128 Pa. 567; Sower v. Weaver, 78 Pa. 443; Woods v. Irvin, 141 Pa. 278; Lomison v. Faust, 145 Pa. 8; English's App., 119 Pa. 533; Jenkintown Nat. Bank's App., 124 Pa. 337; Applebee's App., 126 Pa. 385; Phillips v. Meily, 106 Pa. 536; Cloud v. Markle, 185 Pa. 614; Heimgartner v. Stewart, 180 Pa. 500; Stanton v. White, 32 Pa. 358.

*Rothermel Bros.* and *Richmond L. Jones,* for appellees, were not heard, but cited in their printed brief: Irwin v. Shoemaker, 8 W. & S. 75; Stanton v. White, 32 Pa. 358; Hoeveler v. Mugele, 66 Pa. 348; Penna. R. Co. v. Shay, 82 Pa. 198; Hoopes v. Beale, 90 Pa. 82; Cummins v. Hurlbutt, 92 Pa. 165; Bierer's App., 92 Pa. 265; Lane v. Smith, 103 Pa. 415.

PER CURIAM, March 13, 1899:

Our examination of the evidence in support of the rule to show cause why the judgment should not be opened and the defendant let into a defense has satisfied us that it was clearly sufficient to justify the decree making the rule absolute, etc.

The case was fully considered and so satisfactorily disposed of by the court below that further comment is unnecessary.

Decree affirmed and appeal dismissed at appellants' costs.

