Germantown Trust Company *v.* Stanley Company
of America, Appellant.

Argued April 17, 1940. Before SCHAFFER, C. J.,
MAXEY, DREW, LINN, STERN and PATTERSON, JJ.

534

*Morris Wolf,* of *Wolf, Block, Schorr & Solis-Cohen* and *D. Benjamin Kresch,* for appellant.

*Thomas B. K. Ringe,* with him *J. Tyson Stokes* and *Morgan, Lewis & Bockius,* for appellee.

OPINION BY MR. JUSTICE MAXEY, May 13, 1940:

This is a suit for $20,429.38 as reimbursement for money paid by plaintiff for taxes on certain property owned by defendant company when the taxes were assessed and against which property the plaintiff held a mortgage.

On April 22, 1929, G. E. Stephan delivered to the Reformed Episcopal Church of the Atonement his duly executed bond and mortgage in the principal sum of $250,000, payable two years from date, with interest at 6% payable semi-annually. The mortgage was recorded. It covered two adjoining parcels of land. Defendant acquired title to these premises, under and subject to this mortgage, by deed from Stephan, acknowledged April 22, 1929, and remained as the registered owner of the premises until about November 26, 1935, on which date the premises were conveyed by defendant to one Joseph Seltzer, under and subject to the mortgage.

On October 21, 1929, the church assigned to plaintiff this mortgage and the accompanying bond, as collateral security for a loan plaintiff made to it in the amount of $150,000. By reason of the church's later default, the plaintiff became by appropriate proceedings the owner of the bond and mortgage. On December 7, 1936, after foreclosure proceedings, plaintiff became the owner of the mortgaged premises.

During the years 1933, 1934 and 1935 the City of Philadelphia made certain municipal assessments on the

mortgaged premises for city and school taxes. These assessments, with interest, penalties and other charges, amounted to $15,856.98. During the years 1932, 1933, 1934 and 1935, the assessments for poor taxes against the premises, amounted, with interest, penalties and other charges, to the sum of $648.01. On January first of each of the years just named the defendant was the registered owner of the mortgaged premises, but it did not pay the taxes and charges stated and the plaintiff was therefore, after acquiring title to the property, compelled to do so. The total sum paid by it is the basis of plaintiff's claim.

On February 25, 1931, the church granted at the request of defendant an extension of the time of payment of the mortgage debt, for three years from its due date of April 27, 1931. It also reduced the interest rate to 5%, all of which indulgence was subject to the provision that the defendant comply with the unmodified terms of the bond and mortgage. The third paragraph of the agreement provided, inter alia, that the Stanley Company "by entering into this agreement does not assume the payment of any of the items required to be paid by the obligor under the said bond and by the mortgagor under the said mortgage," and the church "upon default in the payment of any item of principal or interest or any other item required to be paid under the said bond and mortgage . . . shall look solely to the obligor named in the said bond . . . and to the premises upon which the said mortgage . . . is a lien for the payment of any items of principal and interest and other charges and payments which may become payable under the terms of said bond and mortgage."

Appellant contends that by this contract the church agreed to look solely to the obligor and to the mortgaged premises for the payment of the taxes assessed against the premises for the years above stated. Appellant concedes that in the absence of any agreement, the defendant company as owner was legally obliged to pay the

taxes in controversy, and that unless the agreement relieved the owner of the property from liability for taxes "it made no change in their existing legal relations."

The above contention was rejected by the court below. When persons seek by agreement to alter their legal relations, there must to that end be a clear intent embodied in an unequivocal expression. He who pleads such an intent can invoke no presumption in his favor. From him must come proof. In the instant case the burden of proof resting upon the party who pleads altered legal relations is not supported by the evidence offered. The argument that the agreement could serve no other purpose than to change existing legal relations is untenable. It overlooks the fact that parties in order to avoid possible misunderstanding which may be productive of controversy, sometimes are not content with merely having their rights kerneled in the implications of the law but insist upon having those rights expressed. When A declares in a formal agreement entered into with B that he (A) does not assume liability X which B might inadvertently take for granted had become A's though in law it had not, A cannot later successfully contend that he was thereby relieved of liability Y which by law was indubitably his. In this illustration liability X is the "principal and interest" so clearly mentioned in the agreement as "items required to be paid by the" obligor-mortgagor, while liability Y is the taxes whose payment by a registered owner of property is that owner's obligation and which neither by expression nor implication is made a part of the subject-matter of the time-extension agreement. When the extension agreement was entered into, the mortgage to which it referred was payable 56 days later. The defendant as owner of the mortgaged premises was asking for an indulgence, to wit: a postponement of the date of payment and a reduction in the interest rate. It would naturally occur to the officers of the defendant company that the party granting this indulgence might expect a reciprocal con-

cession, and as extension agreements sometime contain the reciprocal concession that the party so indulged, i. e., the owner of the premises which but for the extension might be sold in foreclosure proceedings, will assume payment of the principal and interest secured by the mortgage, it was an act of prudence on the part of Stanley Company to make it clear to the owner of the mortgage and bond that in spite of the valuable concession obtained by it, the Stanley Company was not assuming the responsibility for payment of principal and interest which rested on the obligor in the bond and the original mortgagor. The agreement of February 25, 1931, means exactly that and nothing more. The Stanley Company in the agreement admittedly prepared by it expressly declares that it "does not assume the payment of any of the items required to be paid by the obligor under the said bond and by the mortgagor under the said mortgage," and the church agrees with equal clarity that after any default it will look only to the obligor and to the mortgaged premises for the payment "of any items of principal or interest and other charges and payments which may become payable under the terms of said bond and mortgage." Since no taxes were required to be paid *by the obligor-mortgagor* as such, the agreement cannot possibly be construed as relieving the Stanley Company from the statutory liability of an owner for taxes assessed against its property. As to such liability, see *Penna. Co. for Insurances on Lives & Granting Annuities v. Bergson,* 307 Pa. 44, 159 A. 32, and *Fidelity-Phila. Trust Co. v. Bergson (No. 1),* 328 Pa. 545, 196 A. 28. These taxes did not "become payable under the terms of said bond and mortgage." Therefore they were not "charges" for whose payment the church agreed to look solely to the obligor and to the mortgaged premises. If the church had intended to relieve the owner of the obligation to pay taxes, the latter in drafting the agreement would obviously have inserted the word "taxes and" *after* the phrase "the pay-

ment of" and *before* the words "any items of principal and interest," in the 3rd line from the end of paragraph 3 of the agreement involved.

The case of *Penna. Co. v. Lebanon B. & L. Assn.*, 337 Pa. 316, 10A 2d 418, cited by appellant, is easily distinguishable from the case at bar. In that case this court interpreted an extension agreement as creating another legal relation, i. e., "to raise another obligation," because the owner of mortgaged premises who had obtained an extension of the due dates of the bond and mortgage had clearly "guaranteed the payment of the interest within 10 days after the same becomes due and payable, and the principal of said bond so secured, . . . anything in said mortgage contained to the contrary notwithstanding, together with all taxes assessed as aforesaid." In that case the language used was adequate to create the obligation pleaded; in the instant case, the obligation pleaded finds no verbal support in the agreement produced.

In *Fidelity-Phila. Tr. Co. v. Land Title Bk. & Tr. Co.*, 326 Pa. 262, 192 A. 121, this court held that an extension agreement executed in that case did not release the land owner from its statutory liability for taxes on the land even though (unlike here) the plaintiff in the suit against the owner for taxes assessed during a certain period of the ownership was a party to the agreement.

Appellant argues that since the bond and mortgage required the obligor-mortgagor to "produce receipts for all taxes and water rents of the current year assessed upon the premises described in the mortgage," the obligation to pay taxes rested upon it, i. e., upon the obligor-mortgagor. The error in this reasoning lies in the failure to consider that the only obligation to pay taxes arose from the fact that the obligor-mortgagor was on April 22, 1929, the registered owner of the property mortgaged, as is necessarily the case when such bonds and mortgages are executed. His duty to pay taxes arose from his then ownership of the property; the bond

and mortgage imposed no such duty upon him. Nowhere in these instruments is there a promise or covenant on the part of the mortgagor to pay the taxes on the property, or any provision referring to such a promise or covenant. The only *covenant* is contained in the bond, where the mortgagor "binds and obliges" himself to the payment of the penal sum of the bond. The *condition* of the bond is that if the principal or interest of the mortgage be paid, or if receipts for taxes be produced, the obligation shall be void, otherwise to remain in full force and virtue. Such a condition does not, however, amount to a covenant to produce the tax receipts, just as in the case of a mortgage unaccompanied by a bond (i. e., a promise to pay) the mortgagee must look only to the land for payment and has no personal right against the mortgagor, notwithstanding that the *condition* in the mortgage (i. e., payment of the sum secured) has been broken or not complied with: *Scott v. Fields,* 7 Watts 360; *Baum v. Tonkin,* 110 Pa. 569, 1 A. 535; *Nace's Est.,* 52 Pa. Superior Ct. 607; *Reap v. Battle,* 155 Pa. 265, 269-270, 26 A. 439; *Schweyer et al. v. Walbert et al.,* 190 Pa. 334, 338, 42 A. 694; *Gill's Est.,* 268 Pa. 500, 502-503, 112 A. 80. The distinction between a covenant and a condition is well recognized: *Sharon Iron Co. v. City of Erie,* 41 Pa. 341; 15 C. J. 1217; 12 Am. Jur. 848, Contracts sec. 295. The condition requiring production of tax receipts and water rent receipts by the mortgagor in order to avoid default did not amount to a promise to pay the taxes (any more than it does to pay the water rent), and therefore was not one of the "charges and payments which may become payable under the terms of said bond and mortgage."

When the original obligor-mortgagor parted with his title to the property he parted also with his statutory duty to pay taxes on that property. The payment of taxes on the property had become both the interest and the duty of its *new* owner. The obligation to pay taxes

*never arose from the bond and mortgage;* it existed independently of them. The defendant's disclaimer of February 25, 1931, cannot be construed as a disclaimer of its duty to pay taxes on its own property. We can understand how in view of economic conditions in 1931 the church would extend the time of payment and reduce the interest rate, but it is inconceivable that the church would also, without any quid pro quo, release the owner of the mortgaged premises of its duty to pay taxes theron. Nor can we comprehend why if such a valuable release of a statutory obligation had been obtained by the Stanley Company, the latter in drafting the agreement would not have expressed the release in language indubitably clear.

We find no sound basis for the distinction raised by appellant between the defendant's obligation to pay poor taxes and its obligation to pay city and school taxes. The assessment of poor taxes is as much a governmental function as is the assessment of any other taxes necessary for the proper administration of governmental agencies.

Interpreting this extension agreement as we do, it is not necessary to discuss the legal effect of the lack of actual notice of the assignment of the mortgage to the plaintiff or the effect on plaintiff's right of subrogation if the extension agreement did relieve the defendant from liability for payment of taxes. Nor do we need base our decision on appellee's contention that even if the agreement relieved defendant of liability for payment of taxes *so far as the church was concerned,* it could not affect the right of the plaintiff herein, the latter not being a party to it.

The judgment is affirmed.