## Guthrie *v.* Pittsburg Dry Goods Company, Appellant.

*Taxation—Assessment—Manufactory—Machinery—Appeal of county commissioners.*

1. A woolen factory containing machinery may be assessed as real estate under the Act of April 29, 1844, P. L. 497, which provides for the assessment as real estate of "mills and manufactories of all kinds," and the owner of the building cannot deny his liability for a portion of the tax because the assessor separately stated the value of the building and the value of the machinery, and because the machinery was owned by a tenant who had the right to remove it at the end of his lease.

2. In such a case the assessment clearly establishes the prima facie liability of the property owner for the whole amount of the tax, and if a wrong has been done him his remedy is by an appeal to the county commissioners.

3. When a property owner permits a tax collector or his administrator to pay a tax for the collection of which he is bound to the commonwealth, it is too late for the owner to interpose the objection that the assessment was too high, or that there was included in the enumeration of property which constituted the manufactory assessed machinery not belonging to the property owner.

4. A person who is not a taxable inhabitant of the township in which property assessed is situated, is not entitled to the notice of the time and place for the hearing of appeals provided in sec. 9 of the Act of April 15, 1834, P. L. 513.

Argued April 18, 1911. Appeal, No. 109, April T., 1911, by defendant, fron order of C. P. Westmoreland Co.,

Nov. T., 1909, No. 517, making absolute rule for judgment for want of a sufficient affidavit of defense in case of Doty Guthrie and Robert M. Doty, Administrators of the Estate of D. B. Peoples, deceased, v. Pittsburg Dry Goods Company. Before RICE, P. J., HENDERSON, ORLADY, HEAD and PORTER, JJ. Affirmed.

Assumpsit to recover $806.30 paid by the tax collector of Derry township and for which the defendant is alleged to be liable.

Rule for judgment for want of a sufficient affidavit of defense.

The court below filed the following opinion:

The tax collector was charged in the duplicate with the collection of the taxes enumerated therein, including a tax assessed against the real estate of the defendant. The collector legally had nothing to do with the assessment of that tax, nor with the ascertainment of the proper subject-matter upon which it was to be imposed; neither had he any power or authority, under the law, to exonerate any taxable for the payment of his assessed taxes. If he did not collect the taxes charged to him in the duplicate, he would be compelled to pay them himself, on the settlement of his accounts. The statement shows that this liability to account has, in fact, been enforced against him personally with respect to a portion of the real estate tax charged in the duplicate against the defendant, and the deceased collector's legal representatives now bring this action to reimburse his estate for the expenditure of money he was thus compelled by law to make, for the discharge of a burden that, under the law, ultimately rested on the tax debtor alone. The defendant questions their right to recover, mainly, on two grounds, viz.: (1) That the subject taxation is personal property, and is, therefore, not subject to a real estate tax, no matter who may be the owner of it, and (2) That the defendant does not own the property upon which the tax is assessed, and is, therefore, not

compelled, through this action, to make payment to the collector's estate, even though the latter may have made payment to the respective municipalities which have undertaken to impose the tax, and have collected it. The statement shows the assessment of the real estate to stand in this form: "Factory building, $25,000; four acres, $400; improvement and machinery, $25,000."

As we understand it, the "improvement and machinery" are in the aforesaid "factory building," and the "factory building" is located on the "four acres." Therefore, what is enumerated above in the form of three separate items is but a mode of describing a single subject of taxation, by an enumeration of its several constituents—and the aggregate of the valuations placed on these several constituents is, in each of the assessments, the basis to which the fixed rate of taxation for real estate has been applied. The levy is on the aggregate of the valuations. The rate is the rate appropriate to a real estate tax, and no attempt has been made to levy any other kind of a tax. While the enumeration of the constituents of a single subject of taxation, when looked at from a purely logical and legal standpoint, may not be the best mode of procedure, yet it is a mode that is often pursued in actual practice, and is not violative of any legal right of the taxpayer. In view of the contention made by the defendant in this case, it has, for it, some advantages over an assessment that did not have special regard to the several constituent elements of the subject of taxation. The statement and affidavit of defense show that nothing but a real estate tax, has been imposed, and it is mainly, on that ground, that defendant seeks to defend. The defense set up is to the portion of such a real estate tax as would result from considering the appraisement fixed on only one of the constituent elements of the subject of taxation, viz.: that on the "improvement and machinery." The affidavit avers, with respect thereto, "that the same were the personal property and belonged to the Pearce Manufacturing Company, and illegally assessed as real estate and the

property of the defendant and against the defendant."
No facts are set up tending to show that, in its intrinsic
nature, as that nature would be manifested to the eye of
an assessor, the machinery lacked physical and permanent
connection with the other elements of the assessed real
estate, and that it was not a requisite addition to make
the whole a woolen factory. The defense stands on an-
other ground, which had been given in the first paragraph
of the affidavit—the one that immediately preceded the
one just quoted above. In that preceding paragraph, the
defendant admits its ownership of the "factory building
and the four acres," but denies that it was the owner of
certain improvements referred to in plaintiffs' statement
of claim, and avers that, on or about the March 15, 1905,
the defendant leased the said four acres and factory build-
ing for the term of three years to the Pearce Manufacturing
Company, a corporation duly organized and existing under
the laws of this state, which said company, as said lessee,
bought and placed upon the said premises owned by the
defendant certain improvements, which are the improve-
ments referred to in the plaintiffs' statement of claim,
consisting of carding machines and other machinery used
for making woolen blankets from textile fabrics, and which
said improvements were for the purpose of the trade and
business of the said company as such lessee, which was the
manufacturing of woolen and textile fabrics and articles
of merchandise therefrom; that, under and by virtue of
said lease, the said improvements remained the personal
property of the said Pearce Manufacturing Company and
removable by them."

1. Is the machinery just referred to free from real estate
taxation, by reason of the facts above recited?

If the defendant did not allege that it did not own the
machinery, it would scarcely have alleged that the en-
hanced value of the manufactory, due to the addition of
the machinery essential to a carrying on of such a manu-
factory, would not constitute a proper basis for an incre-
ment in real estate taxation. In Patterson v. Delaware

County, 70 Pa. 381, Patterson's property was returned as a "square of ground, factory, and machinery," the whole assessed as real estate, and a tax levied on the valuation for county purposes. It was claimed that the "machinery" was not properly taxed as real estate. "Held that under the Act of April 29, 1844, sec. 32, P. L. 486, the machinery was properly taxed as real estate."

In that case, the subject of assessment was a cotton factory, owned and occupied by the taxable himself, and he also owned the machinery. In this case, the defendant, according to the affidavit of defense, only owns the land and the factory building—and a tenant owns the machinery. Would that fact—assuming it to be a fact—so differentiate this case from the case of Patterson v. Delaware County, supra, as to render the machinery in this case untaxable as real estate, while in the other case, it was so taxable? The defendant would answer that question in the affirmative. This pending case cannot be made to be a suit to determine questions arising out of a contract between the landlord and the tenant, for they are not impleaded as the parties to the action, but the plaintiff, taking his rights from the several taxing municipalities, the question involved is rather to be looked at as having its origin out of a question between the public and the taxable, arising out of the law authorizing the imposition of the taxes by the municipalities. Considering the terms of their private contract, it may be, as between the lessor and lessee themselves, that the machinery would, in a certain figurative sense, be regarded as "personal property," but the lawmaker enacting a law to devise revenue for governmental support, and designating the proper subjects of taxation may not look on the subject of taxation through the conventional rights of owners—making the same thing taxable in view of one state of the title—and not taxable in view of another state of the title. In the absence of some indication to that effect in the terms of the statute authorizing the public tax, it is not to be assumed that the legislature, bound as it was by a constitutional obligation to authorize

only the levying of a tax shall be uniform on the same class of taxable property, deliberately set about, in defiance of such constitutional obligation, to make the machinery in a factory taxable, if the owner of the soil owns it, and not taxable if a lessee owns it. The manufactory is a manufactory, as certainly in the one case as in the other, and the legislature, presumptively, would regard the productivity of that form of real estate as a unit, and would look at it as it appeared to the assessor from its physical aspect.

Polonius, obsessed by the idea that Hamlet's apparent madness was due to excessive love for his daughter, thought Hamlet to be "still harping on my daughter," when his words were prompted by a far different cause— and, in the same manner, we, if obsessed by a consideration of the legal rights of parties under a private contract between a lessor and a lessee, and designed only to operate as between themselves, may in construing a public tax statute, have our attention diverted from the true point of consideration. That law, when properly construed, is, and must be, the paramount authority in determining a case like this. The lawmaker, in framing the statutes to which we shall presently refer, did not descend, in the designation of the real estate that was to be taxable, into a consideration of rights which lessors and lessees might make by contract with respect to the ownership or use of that real estate, but only sought to guide the assessor, called on under the act, to find the taxable real estate, by the use of terms adequate for such guidance, no matter who might be the owner or user thereof.

The fourth section of the Act of April 15, 1834, P. L. 509, designates taxable real estate by these terms:

"Real estate, viz.: All houses, lands, lots of ground and ground-rents, mills and manufactories of all descriptions, all furnaces, forges, bloomeries, distilleries, sugar-houses, malt-houses, breweries, tan-yards and ferries."

The thirty-second section of the Act of April 29, 1844, P. L. 486, provides as follows:

"From and after the passage of this act, all real estate,

to-wit: Houses, lands, lots of ground and ground-rents, mills and manufactories of all kinds, furnaces, forges, bloomeries, distilleries, sugar-houses, malt-houses, breweries, tan-yards, fisheries and ferries, wharves, and all other real estate not exempt by law from taxation shall be valued and assessed and subject to taxation, for the purposes in this act mentioned, and for all state and county purposes whatsoever."

From one or both of these acts comes the authority to assess real estate for the purposes of taxation. These acts employ their own terms of description, not contemplating the modification of their significance through the instrumentality of any private contract—and there is no other act than these applicable. The subject-matter of taxation is real estate, in the sense of these statutes—not necessarily real estate in the abstract and general sense of legal lexicography—nor yet, in the concrete and figurative sense of some private contract between two individuals in respect to its title or use. In the first of these acts, "mills and manufactories of all descriptions," and, in the second, "mills and manufactories of all kinds" are designated as being proper subjects for assessment—and these special terms, with others, are, for a purpose, superadded to the less specific designation of real estate in general. In the sense of these statutes, when a manufactory exists in fact, it is taxable as real estate, regardless of any conventional rights with respect to the ownership of its constituent parts, as private citizens by their contracts may originate, inter se, those conventional rights.

The assessing officer sees that which physically constitutes a mill or manufactory, and he knows from the statutes that it is taxable as real estate.

"In estimating the value of real estate, it is the duty of an assessor, under the Act of 1844, to value coalbreakers, houses and other improvements, erected by tenants under a mining lease, without regard to whether they are owned by the landlord or the tenant, or whether, as between the landlord and the tenant, they are real or personal estate:"

Gorrell et al. v. Murphy et al., 1 Leg. Gaz. Rep. (Camp.) 495.

"In estimating the ratable value of property, machinery attached to it ought to be taken into the account, without considering whether it was real or personal estate, or whether it belonged to the landlord or the tenant:" Reg. v. Guest, 7 Adolph & Ellis, 951.

"It would seem that the machinery should be taxed without reference to the nature of the title by which the premises upon which it is erected are held. Clearly any other construction of the law would open a wide door to fraud, and prove a constant temptation for subterfuge and false dealing at the same time that it would relieve certain classes of manufacturers from their share of the burden of taxation. The law makes manufactories of all descriptions real estate, and subjects them to taxation." Per WOOD, J., in Luzerne County v. Galland, 3 Kulp, 11.

"A stationary sawmill, in which boilers are set in masonry erected upon lands belonging to another, held by the owners of the mill under a lease, and, as to which the owners of the mill had 'the right to remove at any time prior to April 1, 1906, any buildings erected by you (them), on said mill site and lumber yard,' is liable to taxation as real estate, for county purposes:" Bemis v. Shipe, 26 Pa. Superior Ct. 42.

In the course of the opinion in the case last cited, Judge BEAVER, inter alia, says:

"The entire argument of the appellants is based upon the premise that because, as between the owners of the lands and the owners of the mill, the latter can be called personal property, it is, therefore, personal property for all purposes, and this fact is determined by the permission in a letter from the lessors or owners of the land to the plaintiffs to remove any buildings erected by them on the land belonging to the owners prior to April 1, 1906.

"It may be admitted that, as between the owners of the land and the owners of the mill, the latter may be regarded and treated by them as personal property, and

yet it by no means follows that in contemplation of law for other purposes it is not real estate. Without the express permission of the owners of the land to remove the buildings prior to a certain date, if nothing whatever had been said in regard to them in the original lease, they would doubtless belong to the owners of the land at the expiration of the lease, as being a part of the real estate, but such permission does not change the physical character of the property, nor does it in any way change its legal status, except as between the parties themselves and those claiming under them and as to the legal machinery through which the title of the lessees may be transferred to creditors or others who desire to secure their rights.

". . . . It can scarcely be conceived that the legislature . . . . should intend to exempt from taxation a building upon one tract of land, because it happened to be erected upon a leasehold, under a concession of the right to remove it at the termination of the lease, and impose a tax upon a precisely similar building on an adjoining tract, because it was erected by the owner, and yet, if the contention of the appellants is correct, that would be the inevitable result."

The machinery appraised as a part of the real estate in this case is not shown, by any of the facts set out in the affidavit, not to be taxable as real estate.

The first contention of defendant in the affidavit of defense, therefore, does not embody a sufficient defense. The manufactory in its entirety constitutes a proper subject, under the law, for real estate taxation.

2. What significance, in an action of this kind, does the defendant's asserted lack of ownership of machinery have?

We have already said that the alleged tenant is not and could not be impleaded in this action—that the collector was charged with the collection of the taxes enumerated in his duplicate, and that, even if the assessment was erroneous, it was not in his power to even exonerate the taxable, or relieve himself from the obligation of collecting

it—or of paying it himself if it was not collected by him. As long as the assessment remained unmodified by an authority having legal power to modify it, the obligation of the collector to collect or to personally pay it, remained. This case is predicated on the legal obligation of the collector—not on the consideration that might properly be pressed by the taxable on the attention of the assessor—or, on appeal, on the attention of a board of revision. The defendant does not say that the question of ownership was ever called by it to the attention of either the assessor or the board of revision, whose exclusive duty it is to deal with such questions, but, after the collector, under compulsion of law, has paid the tax, as assessed against the defendant, and now seeks reimbursement from the taxable against whom the taxes were (as to the collector) unalterably assessed, the defendant seeks to interpose here, as a defense to such an action, the allegation that it was not the owner of a part of what went to constitute the assessed manufactory. It was the official duty of the assessor and of the board of revision to ascertain who the taxables were, and once they had done so, the result of their work was binding on the collector. His legal obligations and legal rights attached to the ascertained states of facts, as returned to him in the duplicate. His obligations under that state of facts have been discharged, and this suit is brought to enforce his legal rights under that same special and unmodified state of facts.

"The remedy for an unfair or illegal assessment of taxes is by appeal to the county commissioners. If the party aggrieved neglect it, the collector cannot relieve him, but must collect the tax:" Wharton v. Birmingham Boro., 37 Pa. 371.

Even where an appeal has been properly taken on the question of the ownership of the assessed property, the presumption, in the trial of the appeal, is that the person named by the assessor as the owner is the owner—and the burden rests on him, alleging error in that regard, to show it.

"The township assessor returned the assessment of 'twelve acres of improved land and splash-dam, valuation $4,500 name of owner, Emery Lumber Company.' The presumption is that the officer acted within the limits of his duty, and that the assessment was made against the owner of the property. This established a prima facie case of liability of the Emery Lumber Company, and the burden is on it, to make it appear that the property so assessed did not belong to it, at the time of the assessment." Per HENDERSON, J., in Emery Lumber Co. v. Sullivan County, 28 Pa. Superior Ct. 451.

If, when there is an appeal properly taken, the owner, as ascertained by the assessor, is prima facie correct, it follows, on logical grounds, that, when no appeal has been taken at all, the return of the name of the owner made by the assessor is conclusively correct—in a suit of this kind.

"The sole remedy for an excessive or illegal assessment is by appeal to the board of revision:" Hughes v. Kline, 30 Pa. 227; Wharton v. Birmingham Boro., 37 Pa. 371; Clinton School District's Appeal, 56 Pa. 315; Van Nort's App., 121 Pa. 118.

Only the person assessed can take an appeal. The statutes do not give the collector any such right. As long as the assessment stands unaltered by a tribunal invested by law with legal power to alter it, the returned assessment is conclusive on the tax collector. This is no appeal, but a suit between a tax collector and a taxable conclusively presumed to owe the tax which the former, under legal compulsion, has been obliged to pay.

"A taxpayer cannot defend an action at law to recover the tax, on the ground that it was improperly assessed:" Stewart v. Maple, 70 Pa. 221.

"A common law action of assumpsit will lie at the suit of a borough collector of taxes who has not been exonerated therefrom after the expiration of his warrant against a taxpayer:" Gillespie v. Sefrin, 1 Chester County Reps. 61.

We need not decide whether, by reason of the defendant's not being the owner of the machinery there should be

a severance of the manufactory's constituents according to the special ownerships, and each owner be assessed only with what he respectively owns.  Even if that should be the case, the want of its being so done in this case would not constitute a defense, in a suit of this kind.

"It is the more regular mode to value the whole together as land; but if the improvements only are valued and assessed to the tenant, he being liable by statute to pay all taxes assessed during his possession of occupancy, has no grounds of complaint:" Gorrell v. Murphy, 1 Leg. Gaz. Rep. (Camp.) 495; Caldwell v. Moore, 11 Pa. 58; Act of April 3, 1804, sec. 6, 4 Sm. L. 200, 4 Purd. Dig. 4681.

As to the collector, the question of the name employed in the assessment may not be a very material one, and it is from his standpoint that we are to look at the case.

This property in its entirety is assessed to the defendant, and, for the purpose of the trial of the pending case, it is conclusively presumed to be the owner—unless another thing set up in the affidavit and now to be considered can be regarded as keeping open for consideration here the question of the defendant's ownership.  The fourth paragraph of the affidavit contains this brief averment with respect to a notice of the assessment:

"The defendant avers that they have had *no notice* of any assessment or opportunity to contest the said assessment."

Section 9 of the Act of April 15, 1834, P. L. 509, provides for the assessor's giving "written or printed notice, at least five days before the day of appeal, to every taxable inhabitant within the respective ward, township or district, of the amount or sum for which he stands rated, and the rate per cent of such amount, and of the time and place of such appeal."

Does the defendant mean to say that it is a "taxable inhabitant" of Derry township, entitled to such notice but that it did not receive it?  The affidavit does not specifically say so.  The tenth section of the same act provides

that the commissioners shall publish a public notice "at least three weeks before the day of appeal of the time and place fixed for such appeal." If the taxable was not an "inhabitant within before the day of appeal of the time and place fixed for the . . . . township," but was, nevertheless, therein taxable, presumably this published notice would reach it. Does the defendant mean to assert that this public notice was not given? The affidavit does not specifically say so. But passing the question of the meagerness of the averment in the affidavit, what is the legal effect of the lack of notice of the time of appeal? It would not render the tax invalid, but might afford the taxable a right to be heard by way of appeal at some later date. The sixteenth section of the Act of April 15, 1834, P. L. 509, 4 Purd. Dig. 4639, provides as follows:

"It shall be the duty of the commissioners to hear appeals at any subsequent time when they may be in session previous to the payment of the tax, and to make such alterations as they might have done on the regular day of appeal. Provided that no such appeal shall be heard unless the appellant shall have given due notice thereof to the assessor of the proper ward, township or district."

The defendant, therefore, could at any time prior to paying the tax, have a hearing on the matter of the assessment, and thereby get all the beneficial results due him that were obtainable at the general appeal. The assessment is presumed to be correct as long as it stands. If it is to be altered, it must be done by officials having jurisdiction to act in such matters—and it is incumbent on the taxable himself to make that appeal. No one else has the right to make it. The defendant does not say that it did not have knowledge, before suit brought, of the existence of the assessment of the tax. The affidavit says quite the contrary. The third paragraph of the affidavit, in part, is as follows:

"The defendant admits the levy of the taxes as set forth in the plaintiffs' statement of claim, and avers the defendant denied its liability thereunder, as soon as the

same was presented to the defendant by D. B. Peoples, tax collector, so far as said assessment included the personal property of the Pearce Manufacturing Company, as aforesaid, on the basis of the $25,000 and informed D. B. Peoples of the illegality of the assessment," etc.

The defendant certainly knew, at that time, if not before the existence of the assessment, and, at that time, the opportunity for appeal to the proper tribunal was open, yet instead of resorting to the procedure and tribunal prescribed, the defendant contents itself by alleging to the collector that a portion of the tax was illegal. What had the collector to do with that question? The payment of the portion of the tax admitted to be due has no legal efficacy for exonerating defendant from liability to pay the other portion of the tax. In so far as the collector's powers and liabilities were concerned, the defendant was liable for the whole tax. It is no defense to have simply protested against payment to the collector. To constitute a defense, the tax must be utterly void. Assuming the truth of all that is averred, this tax is not void.

"Notice of the assessment of taxes is not essential to its validity; it merely affords opportunity to appeal from it, if it is excessive or illegally made:" Winton Coal Co. v. Lackawanna County, Lack. Legal News, 195.

In the course of the opinion in the case just cited, Judge ARCHBOLD says:

"If the omission was a mere irregularity, the complainants were bound to move in the matter in due season after they knew of the assessment, and in a proper way. The mere fact that no notice was given of the assessment nor opportunity to appeal from it, did not dispose of the right of appeal. The right still existed, and could be enforced; when, therefore, the complainants knew of the assessment, they should have taken steps to assert that right."

The same duty rested on the defendant in this case, but has been neglected so long that, as against the plaintiff, the right is doubtless lost.

There is nothing set up with respect to lack of notice

and opportunity to appeal that would make the allegation of a lack of ownership a defense in the trial of a case of this kind. Therefore this is no defense on either of the two grounds set up in this affidavit.

Both of those grounds are wholly dependent on the existence and terms of an alleged written contract between the defendant and a lessee. We say written contract—because presumably a contract made on March 15, for three years would commence to operate from the first of the following April. Such a contract is within the statute of frauds and must be in writing: 88 Pa. 100; 99 Pa. 270; 112 Pa. 272. Again, machinery installed as this was, even between lessor and lessee, is a constituent of real estate unless a writing prevents that result. Assuming that those two grounds would constitute a defense (which is not the case), a copy of that agreement would certainly be material to the defense. For affiant to state, in general and indefinite terms, what he conceives to be its proper construction and legal import is but to express a legal conclusion without giving the facts on which it depends.

"When the paper is an important factor and the defendant attempts to set up his interpretation thereof, or inference from it, as a defense, a copy must be attached:" Hebb v. Insurance Co., 138 Pa. 174.

The first paragraph of the affidavit, already quoted, only states the affiant's opinion about the contract and its legal effect, no copy thereof being given. Both the rights upon which the defendant seeks to stand are wholly dependent for their existence on that paper and on the correctness of the conclusions expressed. If the grounds were tenable, the materiality of that paper would require it to be set out, to the end that the court—and not simply the affiant—may be able to pass on its proper construction and legal efficacy. The affidavit says that "under and by virtue of said lease, the said improvements remained the personal property of the said Pearce Manufacturing Company and removable by them." What the proper construction of the instrument is, we can know from an in-

spection of it, but not from the affiant's opinion of its significance alone.

If the defendant was right about the premises on which it bases its defense, this defect would itself be fatal to the sufficiency of the affidavit.

If the defendant has a legal defense, it must be on grounds other than those set up in the affidavit of defense.

The rule for judgment for want of a sufficient affidavit of defense is now made absolute, and judgment is entered in favor of the plaintiff and against the defendant for the sum of $806.30 with interest thereon from February 1, 1907.

*Error assigned* was the order of the court.

*Geo. E. Reynolds*, for appellant.—The improvements and machinery belonging to the lessee, having been separately assessed from the building and land belonging to the lessor, the defendant is not liable for the taxes assessed against the improvements, whether regarded strictly as personal property, or the constituents of a mill or manufactory within the category of real estate under the act of 1834: Hecksher v. Sheafer, 17 W. N. C. 323; Bemis v. Shipe, 26 Pa. Superior Ct. 42; Luzerne County v. Gallan, 3 Kulp, 11; Logan v. Washington County, 29 Pa. 373.

The mere fact that taxes are assessed against a particular person does not impose upon such person the duty of paying taxes, if in fact the property does not belong to him: Miller v. Gorman, 38 Pa. 309; McKeen v. Northampton County, 49 Pa. 519; King v. Mt. Vernon Bldg. Assn., 106 Pa. 165; Com. v. Mahon, 12 Pa. Superior Ct. 616; May's Est., 218 Pa. 64; Fink v. Miller, 19 Pa. Superior Ct. 556; Millard v. Dela., L. & W. R. R. Co., 224 Pa. 448.

Nor could the tenant having paid the taxes assessed against the improvements have recovered them back from the landlord: Flory v. Heller, 1 Mona. (Pa.) 478.

*G. B. Shaw*, with him *John. C. Silsley*, for appellee.— Bemis v. Shipe, 26 Pa. Superior Ct. 42, rules this case.

OPINION BY HENDERSON, J., July 13, 1911:

The tax which is the subject of the pending controversy was assessed pursuant to the provisions of the thirty-second section of the Act of April 29, 1844, P. L. 486, which so far as relates to the taxation of real estate is as follows: "From and after the passage of this act all real estate, to-wit: Houses, lands, lots of ground, and ground rents, mills and manufactories of all kinds, furnaces, forges, bloomeries, distilleries, sugar houses, malt houses, breweries, tan-yards, fisheries and ferries, wharves and all other real estate not exempt by law from taxation shall be valued and assessed and subject to taxation for the purposes in this act mentioned and for all state and county purposes whatsoever." A subsequent portion of the act describes the classes of personal property which are subject to assessment. That the property owned by the defendant was real estate is not open to question. It consisted of land and a building. Whether it contained any machinery belonging to the defendant is not disclosed in the affidavit of defense the averment being that the improvements and machinery enumerated as part of the property in the return of the assessor belonged to the tenant and was therefore improperly included in the valuation of the real estate. That the assessment is and was intended to be the assessment of real estate is obvious. While the property might have been valued in one item the integrity of the assessment was not affected by the fact that the assessor enumerated the elements entering into the aggregate of the valuation and placed a separate value on each. If the assessment had been of land and a building alone with a valuation on each, no one would pretend that the assessment was not against real estate, for the total of the items returned by the assessor and the inclusion of the machinery in the building as a part of that which composed the real estate and contributed to its value must be regarded as bringing it within the category of realty for purposes of taxation. From the point of view of the taxing authorities the property assessed con-

stituted a manufactory. It had all the features and qualities of that kind of real estate and it was evidently the intention of the legislature when providing for the assessment of such property that it should be regarded as an entirety. Mills and manufactories of all kinds are expressly enumerated among the things to be taxed as real estate and these necessarily include the machinery essential to the existence and operation of such establishments. When it became the duty of the assessor of the district to value and return the defendant's property he saw land, a building and the machinery and appliances therein necessary to constitute a mill or factory. There was nothing to put him on notice that there was a division of ownership, and the presumption would be that the owner of the land and building was also the owner of the machinery therein, for the machinery was a constituent of the property to be taxed. That the establishment was a woolen factory is not denied and the machinery was as much a part of the factory as the building which inclosed it. The duty of the assessor was plain, therefore. He found the defendant to be the owner of a plot of land on which a building used for the manufacturing of woolen goods was located and in operation. Such manufactories are declared by the law to be real estate and liable to taxation. It was but the performance of the ordinary duty of the assessor, therefore, to make the assessment and return the same to the county commissioners. It cannot be pretended that if the defendant had been the owner of the machinery the whole property would not be liable to taxation. Does the private arrangement between the tenant and the landlord which permitted the former to remove the machinery at the end of the term change the character of the property as affected by the taxing statutes? We think not. The thing assessed was a factory and the machinery is a part of it. As was said in Gray v. Holdship, 17 S. & R. 413: "The machinery, the wheels, stones and even the bolting cloths are a part of the mill." This is so in a literal as well as in a popular sense. If the

machinery is not to be included there is no manufactory to be taxed and the land and building would be liable not as a factory but as "other real estate" as provided in the same section of the statute. The property is either a manufactory or it is not. If a manufactory it is clearly subject to taxation under the specification of that class of property. It is conceded to be a factory in the affidavit of defense and is therefore liable to the taxation imposed on that kind of property. If not so liable we would have the inequality forbidden by sec. 1 of art. IX, of the constitution, for the owner of an adjoining factory engaged in the same business who owned the machinery as well as the land and building would be subject to an assessment and compelled to pay tax on the whole plant while the factory of which the defendant's building composes a part would be assessed on substantially half of the property value. Such a result was not intended by the legislature. The object aimed at was the subjecting of all property of the same class to the same public burden. The ownership of the property is a subordinate matter. There is the further consideration that the law provides a remedy in the case of an unfair or illegal assessment. The real complaint here is that the valuation returned by the assessor is too high. The remedy to correct such an error was an appeal. The assessment clearly established the prima facie liability of the defendant for the amount of the tax and if a wrong was done by the assessor in this respect the county commissioners are the tribunal to rectify the error in the first instance: Wharton v. Birmingham, Boro., 37 Pa. 371; Van Nort's Appeal, 121 Pa. 118; Clinton School Dist.'s Appeal, 56 Pa. 315. But the defendant says it had no notice of any assessment or opportunity to protest the same. If by this is meant that personal notice was not served on it the objection is answered by the fact that it is not averred to be a "taxable inhabitant" of the township in which the property is situated and therefore is not entitled to the notice of the time and place for the hearing of appeals provided for in sec. 9 of the Act of

April 15, 1834, P. L. 509. The published notice of the time and place for such hearings provided for in the tenth section was presumably given and no denial is made that such notice was published. So far as appears from the affidavit there was no default on the part of the commissioners in affording the defendant an opportunity to appeal. Moreover, provision is made in the sixteenth section of the act for the hearing of appeals by the commissioners at any time when they may be in session previous to the payment of the tax and for the making of such alterations as they might have made on the regular day of appeal. The defendant did not avail itself of this opportunity after it had notice of the amount of the tax and the form of the assessment. Generally speaking it is not a good defense to an action at law for the recovery of tax that it was improperly assessed: Stewart v. Maple, 70 Pa. 221; and when the defendant permitted the collector or his administrators to pay the tax for the collection of which he was bound to the commonwealth it is too late to interpose the objection that the assessment was too high or that there was included in the enumeration of property which constituted the manufactory against which the assessment was made machinery not belonging to the defendant. The careful and comprehensive opinion of the learned judge of the court below renders a fuller discussion of the case unnecessary.

The judgment is affirmed.