Fidelity-Philadelphia Trust Company, Trustee, *v.* Land Title Bank and Trust Company, Appellant.

Argued April 20, 1937. Before KEPHART, C. J., SCHAF-
FER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Boyd Lee Spahr,* of *Ballard, Spahr, Andrews & In-
gersoll,* with him *Knox Henderson,* for appellant.

*Howard H. Rapp* and *Morgan, Lewis & Bockius,* for
appellee.

OPINION BY MR. JUSTICE LINN, May 17, 1937:

This appeal is from a judgment against the registered
owner of land in Philadelphia for taxes assessed dur-

ing the period of such registration and thereafter liened, which the plaintiff had to pay to perfect title obtained at the sheriff's foreclosure sale on a mortgage held by it during the period. The case was tried by a judge without a jury pursuant to the Act of April 22, 1874, P. L. 109, 12 PS section 688 et seq., as amended.

Recent decisions[1] show that the owner of land, whether registered or not, is liable for taxes; that if one allows himself to become the registered owner he brings himself within the statute imposing liability whether in fact he is owner or not, and that it is immaterial whether he holds on a dry or an active trust; that the city may treat either as primarily liable, though, as between the real owner and the registered owner, the latter is secondarily liable and may therefore recover from the real owner sums by him paid on account of the tax. They also determine that if the real owner or the registered owner does not pay the taxes and a mortgagee is required to pay them, he may recover from the real owner or from the registered owner or from them jointly, the amount so paid with interest; this conclusion, it is said, results from the application of the doctrine of equitable subrogation. If the mortgagee is required to satisfy a statutory tax liability imposed on the owner, the law raises an implied obligation in the owner to reimburse him. The right to reimbursement must be clear; it may be made the subject of contract between the parties and if, by contract, the mortgagee gives up his right to recover from the owner, the agreement will be enforced. If, for example, their contract puts the mortgagee in funds to pay the taxes and he fails to apply the money in accordance with the

---

[1] Among them are *Pennsylvania Co., Trustee, v. Bergson,* 307 Pa. 44, 49 et seq., 159 A. 32; *N. Phila. Tr. Co. v. Heinel Bros., Inc.,* 315 Pa. 385, 172 A. 692; *Bunting v. North Philadelphia Trust Co.,* 120 Pa. Superior Ct. 419, 182 A. 656, and cases cited in those opinions.

contract, he cannot thereafter look to the owner.[2] As the parties have the right to contract, they may do so expressly or by implication.

The facts to which those principles are to be applied are thus stated by appellant:

"On January 31, 1927, one Donald M. Love conveyed to the appellant premises 2012-14 Chestnut Street, Philadelphia, Pa. Title was taken by the appellant in its corporate capacity, but on the same day appellant executed and delivered a declaration of trust . . . in which it declared that it held the property in trust to receive the rentals and income therefrom and distribute said income, first, in payment of its charges for services rendered; secondly, in payment of interest on ground rent and mortgages covering the property; thirdly, to pay stated sums to certain creditors of the beneficial owners, and, lastly, to pay the balance in specified proportions to the beneficial owners of the property. Substantially the same trust was declared with regard to the proceeds of any sale which might take place of the said premises. It was further provided in said declaration of trust that the trustee 'shall hereunder be under no duty with respect to any tax or other charges, municipal or otherwise, assessed against said premises or against the owner or tenant thereof . . .' . . . two supplemental declarations of trust which altered simply the manner of distribution to the beneficiaries and extended the term of the trust [were made] . . . The conveyance by Donald M. Love to the appellant first mentioned above was recorded on February 1, 1927, but neither the original declaration of trust nor any of the supplemental declarations of trust were placed of record.

---

[2] See *Integrity Trust Co. v. St. Rita B. & L. Ass'n,* 112 Pa. Superior Ct. 343, 171 A. 283, 317 Pa. 518, 177 A. 5; *Provident Trust Co. v. Judicial B. & L. Ass'n,* 112 Pa. Superior Ct. 352, 171 A. 287; *Bunting v. North Philadelphia Trust Co.,* 120 Pa. Superior Ct. 419, 182 A. 656.

"In July of 1929 Donald M. Love, who was the principal beneficial owner under said declaration of trust, made application to the appellee for a mortgage loan covering said premises. At the time the application for this loan was made by Donald M. Love he explained to the real estate officer of the appellee that title to the property was held by the appellant under an unrecorded declaration of trust and that the appellant's only interest therein was with respect to the collection of rental from the tenant and the distribution of such rental to the mortgage lien holders in payment of interest and to himself and certain others as beneficial owners of the property.

"On August 9, 1929, the assistant real estate officer of the appellee wrote to the appellant informing appellant that appellee had agreed to make Donald M. Love a mortgage loan secured on the property and enclosed in said letter the necessary information for drafting the mortgage papers. Pursuant to said instructions, appellant conveyed title to a straw man who created, on August 28, 1929, a mortgage to the appellee and immediately thereafter reconveyed to the appellant, all of which conveyances were recorded; as in the previous instance, the appellant took title to the property in its corporate name.

"In addition to the information given the appellee by Donald M. Love with regard to the manner in which the appellant held title to the property prior to the date the appellee's mortgage was created, the appellee had acquired further information and knowledge of said declaration and its terms by reason of the fact that it was acting as fiscal agent for Estelle T. Lippincott, one of the beneficiaries under the declaration of trust of January 31, 1927. The appellee was furnished with a copy of said declaration of trust shortly after its execution and delivery on January 31, 1927, by said Estelle T. Lippincott and from that date until August 1, 1930, the appellee received from the appellant letters enclosing

checks payable to Estelle T. Lippincott under the declaration of trust which, in each instance, recited the existence of the declaration of trust . . . Furthermore, . . . the appellee, in making its mortgage loan to Donald M. Love, did not rely upon the appellant's individual credit and, under the circumstances, cannot be said to have expected the appellant individually to pay either the mortgage interest or any taxes assessed against the property.

"On September 28, 1931, the term of the appellee's mortgage was extended for a period of three years . . . In said [draft of] agreement of extension, paragraph 4, which provided that

" 'The party of the second part [the appellant] hereby guarantees and covenants to make prompt payment of the interest and the principal or the balance of the principal of said bonds so secured, together with all taxes assessed and to maintain fire insurance as aforesaid,' was stricken out prior to the execution of the agreement, and a rider was attached which reads as follows:

" 'This agreement is executed by Real Estate-Land Title and Trust Company only as trustee under a deed of trust and its liability hereunder is limited as trustee as provided under said deed of trust and no liability by it in its corporate capacity is assumed hereby.'
This rider was likewise attached prior to the execution of the agreement and was intended by the parties to constitute one of the terms of the agreement.

"The mortgage having later become in default, appellee instituted foreclosure proceedings as of C. P. No. 1, Philadelphia County, June Term 1933, No. 1385, and on August 5, 1933, appellee acquired title to the mortgaged premises by purchase at sheriff sale under said foreclosure . . .

". . . Prior to the creation of the appellee's mortgage the appellant had held a first mortgage in the amount of $85,000.00 secured upon premises 2012-14 Chestnut Street . . . [This] $85,000.00 mortgage was

paid off in full from the proceeds of the plaintiff's $250,-000.00 mortgage with the result that the appellant's interest as mortgagee in the premises ceased completely at the moment of the creation of appellee's $250,000.00 mortgage."

On those facts, it is ably contended, on behalf of appellant, that it has an equitable defense on two grounds: (1) the mortgagee knew before making the loan "that the appellant was not the beneficial owner . . . and did not rely upon appellant's individual credit for the payment of taxes"; (2) by the terms of the agreement extending the maturity of the mortgage, the mortgagee "waived any claim to collect the taxes from the appellant individually."

In *Pennsylvania Co., Trustee, v. Bergson,* 307 Pa. 44, 51, 159 A. 32, we said, "When a deed or other conveyance is duly recorded and registered in the name of a given person he, as the registered title holder, is regarded as the 'owner' for purposes of assessment and taxation, and is personally liable for taxes levied on the property. This liability attached because he holds himself out to the world through public records as owner by being registered and recorded as owner. That such a registered owner, though holding the title absolutely, is merely a dry trustee for the real owner, does not relieve him from that liability. The legislature did not intend that its governmental subdivisions should be put to the trouble and expense of looking behind the record to ascertain who is liable for taxes. When a deed, showing title in a given person, is duly registered under the Act of 1865 and subsequent acts in relation thereto, [the opinion cites the relevant statutes] the taxing authorities need not search beyond this public record to determine if there is some other person against whom it shall levy tax. These authorities may, for the purpose of taxation, treat individuals in their several relations as they appear on the designated indices or the public records that are provided. Persons accepting

such trusts must understand that they place themselves in a position where they become liable for taxes levied on the property while title is in their name."

The process may perhaps be illustrated in terms of procedure as follows: the mortgagee is treated as suing on a subrogated right, seeking reimbursement of money paid to another's use; in effect it is a suit in the legal right of the city to the use of the mortgagee against the registered owner who may, since 1929, by writ of scire facias, add the real owner as a defendant; either may defend by showing payment or its equivalent, or release express or implied; see the Building & Loan Ass'n cases.[3]

During the time the parties were engaged in reaching agreement on the terms ultimately embodied in their contracts, they dealt with knowledge that certain taxing statutes, referred to in the cases cited above, imposed liability for the taxes on either or both. Now, appellant contends that from the fact that plaintiff knew appellant was not the beneficial owner, and did not rely on appellant's individual credit for the payment of the taxes, the court should imply an agreement on the part of the mortgagee to release the registered owner from liability, and look only to the real owner. In the light of our decisions, we must regard that evidence as too meager to support such a release, especially in view of the provisions of the bond to be referred to later; in *Pennsylvania Co., Trustee, v. Bergson,* 307 Pa. 44, at p. 56, 159 A. 32, such knowledge was said to be immaterial.[4] Appellant suggests that in *Bergson's* case it did not appear whether the mortgagee's knowledge had

---

[3] *Integrity Trust Co. v. St. Rita B. & L. Ass'n,* 112 Pa. Superior Ct. 343, 171 A. 283, 317 Pa. 518, 177 A. 5; *Provident Trust Co. v. Judicial B. & L. Ass'n,* 112 Pa. Superior Ct. 352, 171 A. 287; *Bunting v. North Philadelphia Trust Co.,* 120 Pa. Superior Ct. 419, 182 A. 656.

[4] See also *Bunting v. North Philadelphia Trust Co.,* 120 Pa. Superior Ct. 419, 182 A. 656.

been acquired "prior to the making of the mortgage loan." In its effect, the distinction is immaterial; the parties dealt with knowledge of the law imposing liability; as they were competent to provide for release of liability, they should have, and, we think, would have, expressed their agreement to release the defendant, if that was their intention.

The second ground of defense rests on an express contract between the parties, though in a measure also involving the process of implication. The bond and mortgage, dated August 28, 1929, were the subject of the extension agreement made September 28, 1931. The bond required the obligor to "pay, or cause to be paid, unto the above-named Obligee, [plaintiff] its certain Attorney, Successors or Assigns, the just sum of Two hundred and fifty thousand dollars lawful money as aforesaid, ; . . . together with interest thereon, payable half-yearly, at the rate of six per cent. per annum, without any fraud or further delay; and shall also pay all taxes, water rent, claims and charges which may be assessed or levied by any public authority upon the property mortgaged by the Mortgage securing this Obligation, within six months after such tax, water rent, claim or charge shall have become a lien; and shall produce to the said Obligee, its Successors and Assigns on or before the first day of September of each and every year, receipts for all taxes and water rents of the current year assessed upon the mortgaged premises." It also contained the usual provisions that the mortgage might be foreclosed for default. The appellant became the terre-tenant of the premises mortgaged by the straw man: *Commonwealth Trust Co. v. Harkins,* 312 Pa. 402, 408, 167 A. 278. When this extension agreement was drawn in the first instance it contained the provision, quoted above, which was stricken out before execution, and the "rider" added. The appellant contends that these changes in the draft of their agreement support the implication that the plaintiff relieved

the appellant of the tax liability and, accordingly, eliminated from the bond and mortgage the obligations there expressly assumed, to pay the taxes. The provision stricken out has already been noted, but may be repeated: "The party of the second part [the appellant] hereby guarantees and covenants to make prompt payment of the interest and the principal or the balance of the principal of said bond so secured, together with all taxes assessed and to maintain fire insurance as aforesaid." The rider is as follows: "This agreement is executed by Real Estate-Land Title and Trust Company [now appellant] only as trustee under a deed of trust and its liability hereunder is limited as trustee as provided under said deed of trust and no liability by it in its corporate capacity is assumed hereby." We do not think the agreement has the effect for which appellant contends. The contract must be construed as though the eliminated paragraph had never been in the draft; what they signed represents the contract, not something that, though considered in the preliminary negotiations, was expressly excluded from it: *Gianni v. Russell & Co.,* 281 Pa. 320, 323, 126 A. 791.

The extension agreement provided for the payment of interest at the rate of 6%, that the principal would not be paid or tendered for three years after August 28, 1931, and that plaintiff would not demand it during that term "PROVIDED, the interest be paid semi-annually as the same shall become due, the receipts for all taxes assessed on the mortgaged premises shall have been presented to the holder of the said bond and mortgage on or before the first day of September of each and every year, the buildings thereon to be kept insured for the benefit of the said holder thereof for such an amount, for such period, and in companies satisfactory to the said holder thereof, and all other provisions contained in said bond and mortgage be complied with in all respects by the said party of the second part." Paragraph 5 provided "All the terms, conditions and pro-

visions contained in the said bond and mortgage not inconsistent herewith are to remain in full force and effect." The provision so made for the payment of taxes and the production of tax receipts accords with the terms of the bond. The papers show clearly that neither of the parties thought it was releasing the statutory liability for taxes. This is consistent with the "rider" which was properly construed by the learned court below as applying only to obligations expressly assumed in this document by the appellant; or, stating it differently, that appellant should not be liable to pay either principal or interest. In cases cited above, the fact that a mortgagee did not foreclose for default in paying taxes was not regarded as a waiver of the right to recover from the registered owner.

We all agree that this record shows no release, express or implied, of appellant.

Judgment affirmed.