## Mesta Machine Company Case.

Argued March 26, 1943. Before MAXEY, C. J.; DREW, LINN, STERN, PATTERSON, PARKER and STEARNE, JJ.

reargument refused August 12, 1943.

*Harry M. Montgomery*, Assistant County Solicitor, with him *Walter P. Smart*, County Solicitor, for appellant.

*Elder W. Marshall*, with him *Carl E. Glock* and *Reed, Smith, Shaw & McClay*, for appellee.

*Paul F. Mickey*, with him *J. Louis Monarch, Sewall Key*, Special Assistant U. S. Attorneys General, *Samuel O. Clark, Jr.*, Assistant U. S. Attorney General, and *Charles F. Uhl*, U. S. Attorney, for United States, intervener.

OPINION BY MR. JUSTICE DREW, May 12, 1943:

This is an appeal from an order of the Court of Common Pleas of Allegheny County reducing a final

assessment on the real estate of the Mesta Machine Company, a private corporation located in the Borough of West Homestead, Allegheny County, Pennsylvania, made by the Board of Property Assessment, Appeals and Review for ad valorem taxes, pursuant to the Act of May 22, 1933,[1] P. L. 853, Art. II, sec. 201, as amended by the Act of July 2, 1941, P. L. 219, sec. 1.[2]

At the triennial assessment for the years 1940, 1941 and 1942, the taxable value of the mill of the Mesta Company, consisting of lands, as well as buildings and machinery located therein, was valued and assessed for real estate tax purposes. In February, 1942, the Board increased the assessments, inter alia, by the sum of $618,000, to cover the value of certain additional machinery which had been installed on the premises as an integral part of the mill. This machinery was placed in the mill of the Mesta Company, which was the record owner of the land upon which its mill was located, not on a temporary basis, but instead to enable that company to carry out the very purpose for which it was organized, i. e. the manufacture of heavy equipment for profit. This revised assessment was sustained by the Board; and the Mesta Company, contending that it was not liable for the tax based on the additional assessment for the reason that the company did not own that machinery but merely leased it from the United States

---

[1] The provision contained in sec. 12 of the Act of June 21, 1939, P. L. 626, that "The action of the court [below] shall be final", does not apply to assessments made prior to those for the triennial period beginning 1943.

[2] This section of the statute provides: "The following subjects and property shall, as hereinafter provided, be valued and assessed and subject to taxation for all county, city, borough, town, township, school and poor purposes at the annual rate:

(a) All real estate to wit: Houses, lands, lots of ground and ground rents, *mills* and manufactories of all kinds, furnaces, forges, bloomeries, distilleries, sugar houses, malt houses, breweries, tan yards, fisheries, and ferries, wharves, and all other real estate not exempt by law from taxation." (Italics added.)

government which held title thereto, appealed to the Court of Common Pleas. That tribunal permitted the Federal government to intervene in the proceeding, over the objection of the County. After hearing, the court below entered an order sustaining the appeal, setting aside the assessment as to that machinery and reducing the assessment of the mill of the Mesta Company by the sum of $618,000. From that order, the County of Allegheny has appealed to this Court.

This is a case of great importance because our decision will not only dispose of the present controversy, but will also affect many similar arrangements which have been or will be entered into by the United States government with various individuals and companies throughout this Commonwealth as a result of the present national emergency.

The principal contention of Allegheny County is that there is no competent evidence to support the action of the court below in reducing the assessment here under consideration. The County presented a prima facie case by the production of the record of assessment, made by proper officers and approved by the Board of Property Assessment, Appeals and Review: *Chatfield* v. *Board of Rev. of Taxes,* 346 Pa. 159; *Westbury Apartments, Inc., Appeal,* 314 Pa. 130. The Mesta Company and the intervenor, the Federal government, to meet the burden thus cast on the company, offered in evidence a contract entered into between them on October 30, 1940, whereby the company, on a cost-plus and fixed fee basis, undertook to manufacture heavy field guns for the government. This agreement specifically set forth, among other things, that the machinery, the assessment of which gave rise to this appeal, was the property of the Federal government which leased it to the Mesta Company for an indeterminate period, at the nominal rental of one dollar; that the machinery was to be installed on the land and in a building owned by the Mesta Company for the latter's use in manufacturing for profit the war

material contracted for; and that upon the termination of the contract the Mesta Company was to remove the machinery and ship the same, at the expense of the government, to a point to be designated by a representative of the War Department. This agreement was admitted in evidence over the objection of the County, which argues that the court below thereby committed error.

There can be no doubt that the machinery here under consideration formed a real and permanent part of the mill of the Mesta Company, and was, therefore, a proper subject of assessment as real estate, under the provisions of section 201 of the Act of May 22, 1933, P. L. 853, as amended. In *Patterson* v. *Delaware County,* 70 Pa. 381, it was held that the land and building, as well as the machinery, which constituted a cotton factory, were taxable as real estate, under the 32d section of the Act of April 29, 1844, P. L. 486 (the provisions of which are practically identical with those of section 201 of the Act of 1933, as amended). There the court below said, and its views were affirmed by this Court in a per curiam opinion (p. 383) : "That the property taxed in the case before us is *real estate* is not, of course, doubted. But the plaintiff thinks *this particular kind* of real estate was *not intended* to be taxed. He argues that the enumeration of certain kinds in the act, as 'houses, lands, lots of ground, ground-rents, mills,' &c., was to designate precisely what the legislature intended by the preceding terms 'all real estate', and that everything not embraced in this enumeration is excluded. But this view seems to overlook the very important language, before referred to, which follows the enumeration: 'all *other* real estate.' . . . Does not the property here taxed fall within the enumeration? The machinery in a mill is as much a part of it as are the *walls* . . . The plaintiff admits this; but says the legislature did not use the term 'mill' in this sense; that while such is the legal signification of the term, the popular meaning is

otherwise; and that the legislature must be regarded as adopting the latter. But *is* the popular meaning otherwise? When a man, of common intelligence and business experience, speaks of 'Mr. Patterson's Mill,' what does he mean? The establishment in its completed condition—fitted for its proper use? Or the bare walls? (For there is no intermediate point; all between, from the engines to the spindles, is *machinery*.) He could hardly mean the latter; for the walls do not constitute a *mill*, and bear no more resemblance to it, than to a barn."

Furthermore, this private arrangement between the Mesta Company, the owner of the land and buildings and operator of the mill, and the Federal government, the owner of the machinery, which treats the equipment as personal property and permits the latter to remove it at the termination of the contract, can in no way change the legal effect of the Act of Assembly which specifically designates machinery, under these circumstances, as real estate for tax purposes. In this connection, it was said in *Bemis* v. *Shipe,* 26 Pa. Superior Ct. 42, 45: "It may be admitted that, as between the owners of the land and the owners of the mill, the latter may be regarded and treated by them as personal property, and yet it by no means follows that in contemplation of law for other purposes it is not real estate. Without the express permission of the owners of the land to remove the buildings prior to a certain date, if nothing whatever had been said in regard to them in the original lease, they would doubtless belong to the owners of the land at the expiration of the lease, as being part of the real estate, but such permission does not change the physical character of the property, nor does it in any way change its legal status, except as between the parties themselves and those claiming under them and as to the legal machinery through which the title of the lessees may be transferred to creditors or others who desire to secure their rights." See also *Pennsylvania Stave Company's Appeal,* 236 Pa. 97; *Guthrie* v. *Pittsburg Dry Goods Co.,* 47 Pa. Superior Ct. 384.

Nor can the Mesta Company, by its private arrangement acknowledging that the Federal government has title to the machinery which is an integral part of the mill of the company, evade the right of the County to assess the company as the owner of the mill erected upon land title to which is in its name upon the public records. The mill of the company was taxable under the statute as real estate, and this necessarily included the machinery essential to the existence and operation of that manufactory. In *Guthrie* v. *Pittsburg Dry Goods Co.,* supra, the Superior Court held that the owner of the land and building cannot deny his liability for a portion of the tax because the machinery which composed a permanent and essential part of the manufactory was owned by a tenant who had the right to remove it at the end of his lease. There it was said (p. 401) : "Does the private arrangement between the tenant and the landlord which permitted the former to remove the machinery at the end of the term change the character of the property as affected by the taxing statutes? We think not . . . If the machinery is not to be included there is no manufactory to be taxed and the land and building would be liable not as a factory but as 'other real estate' as provided in the same section of the statute. The property is either a manufactory or it is not. If a manufactory it is clearly subject to taxation under the specification of that class of property."

The record showed that title to the land was in the Mesta Company, and the assessor was not obliged to go further. Under the circumstances, he was justified in treating the ground, building and machinery as an entity, a mill or manufactory, and assessing it as such to the Mesta Company, the registered owner of the land. In *Pennsylvania Co.* v. *Bergson,* 307 Pa. 44, 51, this Court said: "When a deed or other conveyance is duly recorded and registered in the name of a given person he, as the registered title holder, is regarded as the

'owner' for purposes of assessment and taxation, and is personally liable for taxes levied on the property. This liability attaches because he holds himself out to the world through public records as owner by being registered and recorded as owner . . . These authorities may, for the purpose of taxation, treat individuals in their several relations as they appear on the designated indices or the public records that are provided." See also *Germantown Tr. Co.* v. *Stanley Co.,* 338 Pa. 533; *Starling* v. *W. Erie Ave. B. & L. Assn.,* 333 Pa. 124; *N. Phila. Tr. Co.* v. *Heinel Bros., Inc.,* 315 Pa. 385. This is true whether or not the registered owner is in fact the actual owner (*Trust Co.* v. *Bank and Tr. Co.,* 326 Pa. 262) ; though the actual owner who is not the record owner may also be assessed, if, of course, not exempt for some reason from taxation (*Pennsylvania Stave Company's Appeal,* supra; *Bemis* v. *Shipe,* supra; *County of Franklin* v. *McClean,* 93 Pa. Superior Ct. 165). The application of this principle does not constitute a violation of due process within the meaning of the Fourteenth Amendment of the Federal Constitution : *Fid.-Phila. Tr. Co.* v. *Bergson (No. 1),* 328 Pa. 545.

It is well established that property held by the United States for the purposes conferred on the government by the Constitution and laws of the United States is beyond the pale of taxation by a State or its political subdivisions (*Irwin* v. *Wright,* 258 U. S. 219; *City of Phila.* v. *Harry E. Myers,* 102 Pa. Superior Ct. 424), unless, of course, permitted by congressional consent.[3] In holding that real estate owned by the United States government was immune from taxation by the

---

[3] As an example of this, consent to tax the real estate of certain Federal agencies was given in the Act of Congress of January 22, 1932, ch. 8 §10 (15 U. S. C. §610), as amended, which provides: ". . . any real property of the corporation [the Reconstruction Finance Corporation and other corporations created under its authority, such as the Defense Plant Corporation, etc.] shall be subject to State, Territorial, county, municipal, or local taxation to the same extent according to its value as other real property is taxed."

State of Tennessee, the United States Supreme Court, in *Van Brocklin* v. *State of Tennessee,* 117 U. S. 151, 155, said: "All subjects over which the sovereign power of a State extends are objects of taxation; but those over which it does not extend are, upon the soundest principles, exempt from taxation. The sovereignty of a State extends to everything which exists by its own authority, or is introduced by its permission; but does not extend to those means which are employed by Congress to carry into execution powers conferred on that body by the people of the United States. The attempt to use the taxing power of a State on the means employed by the government of the Union, in pursuance of the Constitution, is itself an abuse, because it is the usurpation of a power which the people of a single State cannot give." See also *Penn Dairies, Inc.* v. *Milk Control Commission,* 318 U. S. 261; *Clallam County* v. *United States,* 263 U. S. 341; *Mint Realty Company* v. *Philadelphia,* 218 Pa. 104. But this sound and well-settled principle of constitutional law is not in any way applicable to the instant circumstances, for the tax on the mill, which necessarily includes the machinery which forms a component part of the manufactory, is not assessed against the government, but rather against its independent contractor, the Mesta Company, which is operating the mill in furtherance of its own business, on land to which it holds the record title. To exempt this machinery from taxation would not be in relief of the government, but rather in relief of the Mesta Company, and, therefore, it is clear that the machinery is the proper subject of assessment for tax purposes as the property of the Mesta Company even though legal title to it is actually in the Federal government. The fact that the latter, by Article I-D[4] of its contract with the

---

[4] "Article I-D: 1. The Contractor shall be reimbursed in the · manner hereinafter described for . . . (g) Payments from his own funds made by the Contractor [the Mesta Machine Company] under

company, voluntarily agreed to pay the tax has no bearing whatsoever upon this decision, for the legal obligation to pay was on the company and not on the government: *Alabama* v. *King & Boozer,* 314 U. S. 1; *Curry* v. *United States,* 314 U. S. 14; *Penn Dairies, Inc.* v. *Milk Control Commission,* supra. If the Mesta Company defaults in the payment of the tax, the paramount rights of the government in the machinery could not be divested or in any way affected: Cf. *New Brunswick* v. *United States,* 276 U. S. 547; *City of Phila.* v. *Harry E. Myers,* supra. Thus, the government's status, as far as the machinery is concerned, is precisely the same throughout, and it cannot suffer any loss by reason of the assessment of its machinery as part of the Mesta mill. For these reasons, if for no other, the tax on the mill must be held to be legal and just.

In upholding the minimum price regulations of the Pennsylvania Milk Control Law of April 28, 1937, P. L. 417, as it affected a dealer selling milk to the government to be disposed of on lands belonging to this Commonwealth but in use by the Federal government as a military encampment, Mr. Chief Justice STONE, in speaking for the United States Supreme Court, in *Penn Dairies, Inc.* v. *The Milk Control Commission,* supra, said (p. 270): "The trend of our decisions is not to extend governmental immunity from state taxation and regulation beyond the national government itself and governmental functions performed by its officers and agents. We have recognized that the Constitution presupposes the continued existence of the states functioning in coordination with the national government, with authority in the states to lay taxes and to regulate their in-

the Social Security Act, and any applicable State or local taxes, fees, or charges which the Contractor may be required on account of this contract to pay on or for any plant, equipment, process, organization, materials, supplies, or personnel; and, if approved in writing by the Contracting Officer in advance, permit and license fees, and royalties on patents used including those owned by the Contractor."

ternal affairs and policy . . ." It is a matter of great seriousness to the states and their municipal subdivisions that individuals and corporations pay their fair share in taxes for the benefits they and their personnel undoubtedly receive from the public services they enjoy, such as police and fire protection, the use of streets and schools, and other advantages of community life. These are adjuncts of civilization, necessary but expensive, and those who have them should and must pay for them.

Moreover, the fact that one of the two possible parties liable for a tax—the record owner or the actual owner—may for some reason be exempt from taxation will not defeat the right of the taxing power to enforce payment by the other. In *County of Franklin* v. *McClean,* supra, the County levied a tax against buildings erected upon lands leased by the Commonwealth to a tenant who owned the buildings and under his lease had the right to remove the same at the expiration of his term. The record owner being the sovereign, which is not subject to taxation by its subdivisions, the tax upon the structures was assessed in the name of the tenant, the real owner thereof, and this was held proper by the Superior Court. There it was said (p. 171) : "We regard the fact that appellant's estate is held under the State as lessee, rather than under an individual, as immaterial. The tax is not laid against the State nor its interest in the land." In *Kittanning Academy* v. *Kittanning Boro.,* 8 Pa. Superior Ct. 27, it was held that a dwelling-house and property leased by a corporation for school purposes for a term of years at an annual money rental and an agreement to pay taxes and keep the property in repair does not work an exemption from taxes assessed against the owner of the real estate.

The County of Allegheny further contends that the court below also erred in permitting the Federal government to intervene in the appeal filed in the court below by the Mesta Company against whom the assessment was made. We need not pass upon this question,

for obviously under our disposition of the controversy the County in no way was harmed by such intervention.

We are satisfied that the evidence that the machinery was not owned by the Mesta Company was irrelevant and, therefore, improperly admitted. Since the record contains no competent evidence to warrant the action of the court below, the order must be reversed and the assessment of the Board reinstated.

The order is reversed, and the assessment of $3,901,504 made by the Board of Property Assessment, Appeals and Review of Allegheny County of the mill of the Mesta Machine Company for the year 1942 is restored and affirmed; costs to be paid by the Mesta Machine Company.

DISSENTING OPINION BY MR. JUSTICE HORACE STERN:

In dissenting from the court's decision I start with the observation that never since the foundation of our government, so far as careful research has disclosed, has there been a case, either in a state or a federal court, in which a tax imposed by a state or other local authority on property belonging to the United States was sustained, except where the consent of Congress to such taxation had been given, or where the United States had the legal title to the property but the equitable or beneficial interest was in private ownership. Nor has any difference ever been suggested in the application of this principle between personal property, real estate, and chattels affixed to the land and therefore regarded for some legal purposes as real property. On the contrary, every reported case has recognized the immunity from local taxation of *all* property actually owned by the United States. The leading decision to that effect, *Van Brocklin v. State of Tennessee,* 117 U. S. 151, far from being subsequently questioned or departed from, has been cited with approval and followed in a number of cases continuing in unbroken sequence to the present

day; for example: *Wisconsin Central R. R. Co.* v. *Price County*, 133 U. S. 496 (where it was said: p. 504: "It is familiar law that a State has no power to tax the property of the United States within its limits"); *Clallam County* v. *United States*, 263 U. S. 341 (which extended such immunity to property of a corporation all the stock of which was owned or controlled by the United States, the corporation being an instrumentality organized for the purpose of carrying on the first world war); *Lee* v. *Osceola & Little River Road Improvement District*, 268 U. S. 643 (where it was said, p. 645: "It was settled many years ago that the property of the United States is exempt by the Constitution from taxation under the authority of a State so long as title remains in the United States. . . . This is conceded"); *Fox Film Corporation* v. *Doyal*, 286 U. S. 123 (where it was said, p. 128: "The property of the United States is not subject to state taxation"). It is true that where land belonging to the government is sold to a purchaser and the latter has complied with all the requirements of the contract, so that nothing remains to be done but the issuance of a patent or the execution of a deed, the property is subject to state taxation, because in that event equitable ownership has passed to the vendee and the government has a mere naked title; however, if any antecedent condition remains unperformed the property, as such, is exempt from local taxation: *Railway Co.* v. *Prescott*, 83 U. S. 603; *Railway Co.* v. *McShane*, 89 U. S. 444; *Northern Pacific R. R. Co.* v. *Traill County*, 115 U. S. 600; *Wisconsin R. R. Co.* v. *Price County*, 133 U. S. 496; *United States* v. *Rickert*, 188 U. S. 432; *Irwin* v. *Wright*, 258 U. S. 219; *Jaybird Mining Co.* v. *Weir*, 271 U. S. 609; *United States* v. *City of Milwaukee*, 100 Fed. 828; *Lincoln County* v. *Pacific Spruce Corporation*, 26 Fed. (2d) 435; *Mint Realty Co.* v. *Philadelphia*, 218 Pa. 104, 66 A. 1130; see also *City of New Brunswick* v. *United States*, 276 U. S. 547.

From a study of these authorities it will be observed that they hold that taxation of government property is

prohibited when the tax is assessed, not merely against the United States, but against private individuals or corporations as well, and irrespective of who may have the use or possession of it; in most of those cases the United States was not even a party. The majority opinion cites authorities which it asserts support the proposition that where the tax is not assessed against the government but against an independent contractor the immunity does not exist. This, it seems to me, is a misconception of the import of those decisions. What they hold is that a state has the right to impose a tax on an independent contractor on property owned, *not by the United States, but by the contractor;* in other words, the right of a state to tax the property of a citizen is not impaired merely because of the existence of a contract between that citizen and the United States as the result of which the tax indirectly imposes an economic burden on the government. As examples of such cases—obviously not to be confused with one such as the present where the tax is imposed *not upon the property of the contractor but upon that of the United States*—may be cited: *Thomson* v. *Pacific Railroad,* 76 U. S. 579; *Railroad Company* v. *Peniston,* 85 U. S. 5; *Baltimore Shipbuilding & Dry Dock Co.* v. *Baltimore,* 195 U. S. 375; *Susquehanna Power Co.* v. *State Tax Commission of Maryland,* 283 U. S. 291; *Taber* v. *Indian Territory Illuminating Oil Co.,* 300 U. S. 1; *James* v. *Dravo Contracting Co.,* 302 U. S. 134 (where it was said, p. 149: "The tax is not laid upon the government, its property or officers," nor "upon an instrumentality of the government"); *Alabama* v. *King & Boozer,* 314 U. S. 1 (where there was a tax on the purchase of building materials by a contractor but where impliedly it was held that if the government had been the purchaser the tax would have been invalid); *Curry* v. *United States,* 314 U. S. 14 (where a use-tax was imposed on material of contractors employed by them in the performance of their government contract).

In the present case it must be borne in mind that before, at, and ever since the time of the imposition of

the tax, not only the legal title but the entire beneficial ownership of the machinery was solely in the United States; it was merely loaned or leased to the Mesta Company for the nominal consideration of a dollar. Moreover, it is not pretended that the tax was based on an appraised valuation of any interest of the Mesta Company in the machinery arising from its right to use it; the assessment was on its full value, appraised as a separate item of property at $618,000, and was a direct tax on the property itself. As a matter of fact, the contract between the Mesta Company and the government provided that the company could not use this machinery for any purpose other than the manufacture of guns for the United States under that contract, so that the company had no interest of its own in the machinery in connection with any private manufacturing business it might transact. The law of Pennsylvania does not permit an assessment against divided equitable interests in real estate but assesses the entire taxable res as such, and if a tax sale results from default in the payment of the tax, the title to the res is sold: *Mint Realty Co.* v. *Philadelphia*, 218 Pa. 104, 112, 66 A. 1130, 1132.

In *People ex rel. Donner-Union Coke Corporation* v. *Burke*, 204 App. Div. 557, 198 N. Y. S. 601, it was held that a plant (buildings and equipment) owned by the federal government, which was erected during the first world war on land owned by a private corporation and sold to that corporation under a contract reserving title until payment of all installments due, was not subject to taxation by the City of Buffalo. That decision was affirmed by the New York Court of Appeals, without an opinion, in 236 N. Y. 650, 142 N. E. 320. The legislature of New York then passed an act authorizing the assessment and taxation of the interest of the private corporation in the property, such assessment to be at the full value of the property, but it was held that this was nothing more than an attempt, under the guise of taxing the corporation's interest, to tax the property itself,

and accordingly, while the assessment of the land belonging to the corporation was sustained, the assessment of the plant built thereon and owned by the United States was vacated and set aside: *People ex rel. Donner-Hanna Coke Corporation* v. *Burke,* 217 N. Y. S. 803, affirmed, without an opinion, in 222 App. Div. 790, 226 N. Y. S. 882, and by the Court of Appeals in 248 N. Y. 507, 162 N. E. 503.

In *Andrews, Ordway & Green* v. *The Auditor,* 69 Va. (28 Grat.) 115, it was held that buildings which were the property of the United States, erected on land belonging to a private owner and used for dressing stone to be employed in the erection of public buildings at Washington, were not subject to taxation by the State of Virginia either as personal property or as parcel of the land on which the buildings were erected. The court said in language which is here peculiarly apposite (p. 128): "Undoubtedly where the buildings erected on the land *are themselves the subject of taxation,* the state will take no notice of private contracts which sever the ownership of the land from that of the buildings; and will hold the owner of the land responsible for the taxes on both. But suppose the buildings *are exempt from taxation,*—how then? Suppose a church or parsonage, or other building used for charitable purposes, is erected on land with the permission of the owner, he retaining the title to the soil on which it stands; can the owner of the land be taxed for the value of such buildings? Certainly not. If authority is wanting for so self-evident a proposition, I refer to the cases cited by the learned counsel for the defendants in error. . . . But it is said that churches and like buildings are exempt from taxation by *express statute.* So they are. And the buildings erected by the United States, owned by that government, and used for the lawful purpose of carrying into execution its granted powers, are also exempt from taxation—not by express statute it is true, but by laws as potent and obligatory as if they were written on the statute books of every state in the Union."

In our own state, in *County of Franklin* v. *McClean,* 93 Pa. Superior Ct. 165, a private citizen constructed improvements on land leased from the Commonwealth, and it was held that the buildings thus erected were taxable by the county as real estate but the land itself, belonging to the Commonwealth, was not taxable. By the same token the reverse is true; that is to say, if the land were privately owned and the title to the improvements were in the Commonwealth the improvements would be exempt from taxation although the land would be taxable to its owner.

Not only because this machinery is owned by the United States is it exempt from taxation but also because it is an instrumentality of the United States used in the prosecution of the war and therefore in the exercise of the most vital power conferred by the Constitution upon the federal government. The Mesta Company is an independent contractor and not itself an instrumentality of the government (*Penn Dairies* v. *Milk Control Commission of Pennsylvania,* 63 Sup. Ct. Rep. 617, 620) but property can be, and the machinery here is, such an instrumentality; *United States* v. *Rickert,* 188 U. S. 432; *Port Angeles Western R. R. Co.* v. *Clallam County,* 20 Fed. (2d) 202; *Dewey County* v. *United States,* 26 Fed. (2d) 434 (certiorari denied, 278 U. S. 649). Indeed, it seems to me inconceivable that a state or other local authority should have the power to impede the national effort to win the war by imposing taxes upon the instruments owned and needed by the government for that purpose. If the United States had guns stored in various cities of the Union, could such cities, or the states in which they were located, impose a property tax upon those implements of warfare? I realize that there has been a trend in the decisions of the Supreme Court of the United States toward holding that non-discriminatory taxation by a state, that is to say, taxation which does not single out the United States as a taxpayer, is not invalid; that trend is discussed in

*Penn Dairies* v. *Milk Control Commission of Pennsylvania,* 63 Sup. Ct. Rep. 617, 621. But, while a tax discriminating against the United States would certainly be invalid, I do not understand that a tax is valid just because it does not so discriminate; its validity is still subject to the limitation which, resulting from the nature of our federal system, requires that property belonging to the United States, and especially if used by it for the performance of one of its vital constitutional functions, should be exempt from local taxation. If, for example, a property tax were imposed by a state on all courthouse buildings within the state, could the tax be levied on a federal courthouse there located just because it applied to *all* courthouses, state and federal alike? If a property tax were imposed by a state on guns carried by persons within the state, could the tax be levied, because it was non-discriminatory, on guns carried by soldiers of the United States army within that state? The doctrine of "non-discriminatory" taxation has been applied to taxes on the property of contractors dealing with the government, but it has never been held to justify a tax imposed upon the government's own property or upon the instrumentalities through which it exercises the powers granted it by the Constitution. Nor is there any merit in the argument that the machinery, together with all the other property in the mill, is presumably given local police and fire protection. Such protection is also afforded to federal postoffices, courthouses, arsenals and other government establishments, but that does not make them liable to local taxation; it is for Congress alone to declare that, because of this consideration, the state or other local authority should be permitted to tax government property.

The basic theme of the majority opinion is that, although this machinery belongs to the United States, it lost its immunity from state taxation when the government allowed it to be placed in the plant of the Mesta Company; in that connection great stress is laid upon

the decisions in Pennsylvania which hold that the tax here imposed is one on the mill or manufactory as a whole, and that tax assessors are not required to investigate whether any part of the equipment belongs to someone other than the apparent owner. It need scarcely be said that the inconvenience which might be occasioned to tax assessors arising from any such duty of investigation (*Pennsylvania Company, Trustee,* v. *Bergson,* 307 Pa. 44, 51, 159 A. 32, 34) is not to be weighed against the right of an exempt owner. As far as private persons are concerned, Pennsylvania may, if it sees fit,—either as a matter of practical expediency or of economic policy,—tax land, building and equipment as a whole, regardless of the fact that parts of the property may be owned by other persons, and even by citizens of other states: *Coe* v. *Errol,* 116 U. S. 517. In the present case, however, we are dealing, not with expediency or policy, but with the constitutional *power* of Pennsylvania where the owner of part of the property taxed happens to be the United States. It is contended that, although machinery belonging to the government is not taxable so long as it retains its status as personal property, it becomes locally taxable as real property when bolts are driven through it to the floor of the Mesta Company's mill. It is true, of course, that for certain purposes machinery affixed to a building is regarded by the law as though it were real estate, and, if privately owned, might properly be so regarded for purposes of taxation. Even if, however, it be deemed to be real property, it is real property belonging to the United States and therefore is not taxable. If the United States owned a *horizontal* islet of land in the middle of the plant, certainly no one would contend that that islet would be taxable; it may not be too fanciful to view this machinery as a piece of *vertical* real property belonging to the United States, and no more taxable, therefore, than it would be under the hypothesis suggested, for what difference should it make whether the property owned by the government be distinguished from

that owned by the Mesta Company by horizontal or by vertical boundary lines? Such a distinction would subordinate actualities to a type of legalism unbefitting' the purpose and art of constitutional interpretation. The important point is that, whatever the technical nomenclature ascribed to it, the machinery is owned by, and is an essential instrumentality of, the United States, and it cannot be deprived of the resulting immunity given it under our constitutional system merely because, in order to facilitate its operation, it is necessary temporarily to fasten it to the floor of a mill. Such fastening still leaves it a distinct, individuated part of the property; it does not change its ownership, and it is *ownership* which is the criterion of taxability under the statute by which this tax is imposed. In short,—to state the basic proposition in simple language,—*the United States owns a distinct, clearly defined, tangible part of this mill and that part is exempt from local taxation.*

It is said in the majority opinion that "if the Mesta Company defaults in the payment of the tax, the paramount rights of the government in the machinery could not be divested or in any way affected." It seems to me that this very statement constitutes a back-handed acknowledgment of the weakness of the majority viewpoint. The Act of June 4, 1901, P. L. 364, provides that all taxes are first liens on the property taxed and that such liens shall be first paid out of the proceeds of any judicial sale of the property. In the admission, therefore, that this machinery cannot be *sold* by the taxing authority there is inherent the admission that it cannot be. *taxed,* for, as was said in *Mint Realty Company* v. *Philadelphia,* 218 Pa. 104, 110, 66 A. 1130, 1132, "The power to tax implies the power to divest the title by a tax sale when there is default in the payment of the taxes levied," and in *Northern Pacific R. R. Co.* v. *Traill County,* 115 U. S. 600, 610, "A valid sale . . . for taxes, being the highest exercise of sovereign power of the State, must carry the title to the property sold, and if it does not do this, it is because the

assessment is void. It follows that, if the assessment of these taxes is valid . . . the sale confers a title paramount to all others, and thereby destroys the lien of the United States for the costs of surveying these lands. If, on the other hand, the sale would not confer such a title, it is because there exists no authority to make it." As already stated, there is no pretense that the tax here in question was on the interest, equitable or otherwise, of the Mesta Company in the machinery, not only because the company *had* no such interest apart from its right to use the machinery under its government contract, but because the tax admittedly was on the full value of the machinery and was imposed upon the Mesta Company, not as user or possessor, but as owner of the mill. The situation, therefore, is quite different from that which existed in the case of *City of New Brunswick* v. *United States,* 276 U. S. 547, where the vendees of property, the title to which was in the United States, not only had a substantial interest therein, but had completed the payments to the government which entitled them to receive a deed to the property and had thereby relegated the United States to the legal position of a quasi-mortgagee.

I take it that little, if anything, need be said in justification of the action of the court below in permitting the United States to intervene, for how else could it assert its rights? It is interested not only because it expressly contracted to reimburse the Mesta Company for the taxes which the latter might be required to pay, but because, even in the absence of such a contract, the Mesta Company could recover from it the amount of the tax on the machinery. "As between the real owner and the registered [that is, the nominal or apparent] owner, the latter is secondarily liable and may therefore recover from the real owner sums by him paid on account of the tax": *Fidelity-Philadelphia Trust Company, Trustee,* v. *Land Title Bank & Trust Co.,* 326 Pa. 262, 264, 192 A. 121, 122. Thus there is peculiarly applicable here the statement made by the court in *Colorado Bank* v.

*Bedford,* 310 U. S. 41, 52, that "The person liable for the tax, primarily, cannot always be said to be the real taxpayer. The taxpayer is the person ultimately liable for the tax itself." It is therefore clear that, just as in the *Van Brocklin* case and many others of those hereinbefore cited, the fact that the assessment of the tax is against the Mesta Company, and not the United States directly, is of no significance as far as the validity of the tax is concerned. The United States is the real party in interest, not because of any indirect shifting to it of the economic burden of the tax, but because it is bound, even irrespective of its contract, to reimburse the Mesta Company, and it is therefore the real taxpayer involved. Of course, the Mesta Company also has the right, apart from that of the government, to resist the tax imposed upon it; it is not obliged to submit to an invalid levy and then seek reimbursement from the government.

Because, then, the tax which is sought here to be imposed is on property legally and beneficially in the sole ownership of the United States, and because also that property is an instrumentality vital to the execution of the war powers of the government, I do not think it an exaggeration to say, as was said by the court below: "That the taxing by a state or any of its subdivisions of property owned by the United States of America and used by it in carrying out a constitutional function constitutes a violation of the Constitution of the United States and of the principle of dual sovereignty upon which that Constitution is based, is no longer open to debate. The assessment and levy of such a tax is clearly invalid."

I would affirm the order of the Court of Common Pleas of Allegheny County.

Mr. Justice ALLEN M. STEARNE concurs in this opinion.