Klevansky, et al. *v.* Redevelopment Authority.

Argued December 6, 1971, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER and ROGERS.

*Raymond C. Schlegel,* with him *Scott L. Huyett, Carl F. Mogel* and *Balmer, Mogel, Speidel & Roland,* for appellants.

*Donald F. Spang,* with him *Charles K. Derr, Jr., D. Frederick Muth* and *Adam B. Krafczek,* for appellees.

OPINION BY JUDGE KRAMER, February 14, 1972:

This is an appeal from an Opinion (dated July 8, 1971) and Order (dated August 24, 1971) of the Court of Common Pleas of Berks County, distributing certain escrow funds to the city, school and county taxing authorities of the City of Reading.

All of the necessary and pertinent facts in this case were stipulated for the record in a colloquy of counsel before the court below. On February 14, 1967, and on March 21, 1967, the Redevelopment Authority of the City of Reading (Authority) filed Declarations of Taking covering certain properties of the appellants (Leon and Earl Klevansky), situated in the City of Reading.

Each of the two Declarations of Taking was separately docketed. On March 13, 1967 and April 19, 1967, the Klevanskys timely filed Preliminary Objections to the Declarations of Taking. These Preliminary Objections were withdrawn on December 24, 1969, following almost three years of court proceedings thereon.

The Klevanskys remained in possession of the condemned properties and continued to use them in the conduct of their business until December 1, 1969, at which time the premises were leased by the Klevanskys to a tenant for a term extending through May 31, 1970. The record further indicates that the lease term was again extended to at least the end of August 1970. Throughout the term of the lease, the Klevanskys received the rental payments. The record is not clear as to whether the tenant continued in possession thereafter. However, the record is very clear that the Authority did obtain actual possession of the property on October 19, 1970.

After withdrawal of the Preliminary Objections, a Board of View was appointed, which ultimately awarded a total of $161,000 in damages to the Klevanskys for the condemned properties. No appeals were taken from the award of the Board of Viewers. On October 19, 1970, the Authority paid $156,318.95 to the Klevanskys, and placed the remaining $4,681.05 of the award in the monies in escrow. These monies were to be held in escrow pending a determination of whether the Authority or the Klevanskys were responsible for the payment of various real estate taxes on the condemned premises for the years 1969 and 1970. The record shows that the Klevanskys paid all (county, school district and city) of the real estate taxes for the years 1967 and 1968, and likewise paid the city real estate taxes for the year 1969. All of the other real estate taxes for the years 1969 and 1970 went unpaid. In

addition to the escrowed $4,681.05 of the Klevanskys award monies, the Authority, from its own funds, added $1,485.50 to the escrow funds, representing its pro rata share of the 1970 real estate taxes for the balance of the year 1970, i.e., after October 19, 1970, the date actual possession was relinquished.

The Authority then petitioned to have the escrow funds paid into court pending the court's determination as to who was entitled to the escrow funds (the Klevanskys or the taxing authorities). In its opinion, the court below held that the Klevanskys were liable for unpaid taxes during the years 1969 and 1970, i.e., to October 19, 1970. In its opinion, the court directed the Redevelopment Authority and the taxing authorities to submit an appropriate order for the distribution of the $6,166.55, the amount paid into court. On August 24, 1971, the court signed an order directing the payment of $4,681.05 to the three taxing authorities. The order, however, made no provision for the distribution of $1,485.50 paid into court by the Authority for taxes accruing between October 19, 1970 and December 31, 1970.

Appeal was taken to this Court on September 2, 1971, and thereafter the Authority filed a Motion To Quash on the theory that the appeal was taken after the expiration of the thirty-day appeal period as permitted by the Appellate Court Jurisdiction Act, Act of July 31, 1970, P. L. 673 (Act No. 223), 17 P.S. §211.502. The Motion To Quash must be denied for the reason that the opinion of the court below filed on July 8, 1971, did not constitute a final order. *See Watkins v. Hughes*, 206 Pa. 526, 56 A. 22 (1903), *Monnia's Estate*, 270 Pa. 367, 113 A. 550 (1921), *Simpson v. Pennsylvania Turnpike Commission*, 384 Pa. 335, 121 A. 2d 84 (1956). The final order in this case was entered August 24, 1971, and therefore the appeal was timely filed.

The sole remaining question, then, is whether, under the facts of this case, the Klevanskys or the Authority are liable for the real estate taxes remaining unpaid for the years 1969 and 1970. In making a determination of this issue we must refer to several sections of the Eminent Domain Code, Act of June 22, 1964, Special Sessions, P. L. 84, Article 1, Section 101 et seq., 26 P.S. §1-101 et seq.

There are two specific references to real estate taxes in the Code, *supra;* the first is found at Section 521, 26 P.S. 1-521, where it is provided: "Damages payable to a condemnee under any provision of this act shall be subject to a lien for all taxes and municipal claims assessed against and all mortgages, judgments and other liens of record against the property for which the particular damages are payable, *existing at the date of the filing of the declaration of taking,* and said liens shall be paid out of the damages in order of priority before any payment thereof to the condemnee, unless released. . . ." (Emphasis added) The other reference is found in Section 614 of the Code, *supra,* 26 P.S. 1-614: "At the time of payment of the damages, the condemnor shall pay to the condemnee as part of the damages the pro rata portion of all real property taxes, water and sewer charges, *paid* to a taxing entity or a municipal authority *by the condemnee* with respect to the condemned property, allocable to a period subsequent to the filing of the declaration of taking or the relinquishment of possession, *whichever occurs later."* (Emphasis added)

Section 521 quoted above clearly indicates a legislative intent to charge the condemnee with the liability for the payment of all taxes owing on the date of the filing of the declaration of taking. The legislative intent in Section 614 of the Code, *supra,* appears to be an assurance to the condemnee that if he has already paid taxes prior to the taking he will be reimbursed as

part of the damages, on a pro rata basis, all taxes for the period after the relinquishment of possession. And so we see that the Legislature has provided for real estate tax liabilities before and after the filing of the declaration of taking and the relinquishment of possession. However, there is no specific statutory provision for a situation, such as in this case, where the condemnee remains in possession for more than three years, and no one pays the taxes for the last two of those three years.

The Klevanskys argue that by virtue of Section 402 of the Code, *supra*, 26 P.S. §1-402, title to the condemned property passed to the Authority on the date of the filing of the declaration and that, therefore, the Authority is responsible for the unpaid real estate taxes. Incidentally, the Klevanskys agree that, under the Code, *supra*, if they voluntarily had paid the real estate taxes for 1969 and 1970, they would have no claim to a refund for any of the taxes they paid for the period prior to relinquishment of possession. The Authority counters with the argument that it did not have absolute title to this realty because of the filing of the Preliminary Objections, which remained pending for about three years. We refer to Section 407 of the Code, *supra*, 26 P.S. 1-407, where it is stated that the Authority had the right to possession of the property "unless preliminary objections warranting delay are pending. . . ." In that same section, under subsection (b),* we note, however, that the Klevanskys had the option of tendering possession to the Authority which

---

* "(b) If within sixty days from the filing of the declaration of taking, the condemnor has not paid just compensation as provided in subsection (a) of this section, the condemnee may tender possession or right of entry in writing and the condemnor shall thereupon make payment of the just compensation due such condemnee as estimated by the condemnor. . . ."

would have eliminated any problems relating to real estate tax liability. The point here is, that in Section 407 of the Code, the condemnee had positive control over possession whereas the condemnor had only the possibility of possession subject to the discretion of a court on whether or not the preliminary objections filed by the condemnee warranted a delay of the granting of possession to the condemnor.

In attempting to determine who is liable for real estate taxes in such cases, we are aided by the case of *Baltimore and Ohio Railroad Appeal*, 405 Pa. 349, 353-4, 175 A. 2d 841, 843 (1961), which involved the tax liability of a railroad which was relocated onto land condemned by and titled in the name of the Commonwealth (and remained so titled for a number of years). The City of Pittsburgh attempted to levy property taxes on this land, while the Railroad maintained that real estate taxes follow the record or registered owner. We believe the language of the Court in that case is pertinent to the disposition of this case. There the Court said:

"In the first place, under the facts presented, it is the B. & O. Railroad which is the *actual* and *real* owner of the property. Any other conclusion would belie the facts. The railroad became the equitable owner thereof under the agreement of May 29, 1952. It took *exclusive possession* in the middle of the year 1955 and, then and there, assumed *complete use for its own purposes,* including the erection of buildings thereon. Its right to occupancy and use is unquestioned. The mere formality of executing and delivering the deed is all that is necessary to make records conform to the facts. No antecedent conditions remained unperformed as to the conveyance of the fee. The Commonwealth has no actual estate in the property. It holds a mere *naked title.* Under its agreement, it is legally

bound to convey the fee to the appellant. Why the latter has not insisted upon this formality does not appear.

"When the Commonwealth appropriated the land and facilities of the railroad, it was legally obliged under the provisions of the Act of June 1, 1945, P. L. 1242, as amended, 36 P.S. §670-412, to provide a substitute and favorable property for relocation purposes. The Commonwealth appropriated and took record title to the land involved in order to carry out this legal obligation and solely for the use and benefit of the railroad.

"The General County Assessment Law of May 22, 1933, P. L. 853, as amended, 72 P.S. §§5020-201 et seq., is the statutory basis for the assessment of all real estate subject to taxation. There is nothing contained therein that requires that real estate taxes be levied only against the recorded owner of the fee. In general, *taxes are determined by ownership.* It has long been the policy of the law that the real owner should be taxed: No. Phila. Trust Co. v. Heinel Bros., Inc., 315 Pa. 385, 172 Atl. 692 (1934). The actual owner, who is not the record owner, may be assessed unless exempt from taxation: Pennsylvania Stave Company's Appeal, 236 Pa. 97, 84 Atl. 761 (1912) and Bemis v. Shipe, 26 Pa. Superior Ct. 42 (1904). The actual owner of the realty, whether registered or not, is liable for the taxes: Fidelity-Phila. Trust Co. v. Land Title Bank and Trust Co., 326 Pa. 262, 192 Atl. 121 (1937). The right of the taxing authority to collect unpaid taxes from the registered owner is not exclusive and may be exercised against *the real or beneficial owner*: No. Phila Trust Co. v. Heinel Bros., Inc., supra, and Pennsylvania Co. v. Bergson, 307 Pa. 44, 159 Atl. 32 (1932). Also, an equitable interest in real estate is subject to taxation: City of Philadelphia v. Myers, 102 Pa. Superior Ct.

424, 157 Atl. 13 (1931). In the case of a contract for the conveyance of land, *the burden of taxation* as between the parties *follows possession* or the right thereto: U.S. v. Certain Parcels of Land in Phila., 130 F. 2d 782 (1942)." (Emphasis added)

In applying the holding of the Court in the *B. & O. Railroad* case, on a tax liability basis, the real or actual owner in this case was the Klevanskys, because during the entire period that this matter was pending under the Preliminary Objections, and certainly until December 24, 1969, when the Preliminary Objections were withdrawn, the Klevanskys had the exclusive use and control of the condemned property. The Klevanskys used this property in their food business. Furthermore, when they ceased using the property for their own purposes, they then leased the property to a third person and received the rents under that lease through, at least, August of 1970.

Section 611 of the Code, *supra,* 26 P.S. 1-611, provides that detention damages are not payable to the condemnee during the period that the condemnee remains in possession; and it is also provided that any rents the condemnee receives after the Declaration of Taking has been filed cannot be charged against the condemnee. It would seem, then, that the Legislature expressed an understanding that all of the rights, duties, responsibilities and liabilities in a condemnation would not be finally determined on the date that the Declaration of Taking was filed. Section 611 acknowledges that the condemnee under certain circumstances will be permitted to use the condemned property and even continue to collect rentals. The Statutory Construction Act, Act of May 28, 1927, P. L. 1019, §51, 46 P.S. §551, directs us to carry out the full legislative intent. In view of the fact that Section 614 of the Code, *supra,* does not make a specific provision for

the payment of taxes for the period between the date of filing of the declaration of taking and the date of the relinquishment of possession, we conclude that the Legislature intended that the law controlling real estate tax liability as set forth in the *B. & O. Railroad* case, *supra,* be applied. Therefore, we hold, under the facts of this case, that the Klevanskys are liable for the real estate taxes remaining unpaid for the years 1969 and 1970, to the date of the relinquishment of possession. Such is our opinion inasmuch as the appellants were in actual physical possession and had actual use or control of the condemned property throughout that period of time.

Based upon the above analysis of the applicable law, we must affirm the Order of the court below. However, as earlier pointed out in this opinion, the Order of the court below is deficient in that it failed to distribute $1,485.50 (paid into the court by the Authority), representing the real estate taxes on a pro rata basis due after October 19, 1970, for the tax year of 1970. We must therefore remand this matter back to the Common Pleas Court of Berks County for the purpose of permitting the court to amend its Order so as to correct this deficiency.

We therefore,

#### ORDER

AND Now, this 14th day of February, 1972, based upon the opinion of this Court in this case, filed this date, it is hereby ordered that the Motion To Quash is denied and the matter is remanded to the Court of Common Pleas of Berks County, Pennsylvania, for the purposes set forth in said opinion.

Judge CRUMLISH, JR. concurs in result only.